*EXHIBIT "A"*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**
www.flsb.uscourts.gov

In re:

Brazen Sky Limited                                    Chapter 15

Debtor in a Foreign Proceeding.                       Case No.:
_____/

In re:

Aabar Investments PJS Limited                         Chapter 15

Debtor in a Foreign Proceeding.                       Case No.:
_____/

In re:

Tanore Finance Corporation                            Chapter 15

Debtor in a Foreign Proceeding.                       Case No.:
_____/

In re:

Blackstone Asia Real Estate Partners Limited          Chapter 15

Debtor in a Foreign Proceeding.                       Case No.:
_____/

In re:

Vasco Investment Services SA                          Chapter 15

Debtor in a Foreign Proceeding.                       Case No.:
_____/

In re:

Selune Limited                                        Chapter 15

Debtor in a Foreign Proceeding.                       Case No.:

1

_____/

In re:

Pacific Rim Global Growth Limited                    Chapter 15

Debtor in a Foreign Proceeding.                      Case No.:

_____/

In re:

Affinity Equity International Partners Limited        Chapter 15

Debtor in a Foreign Proceeding.                      Case No.:

_____/

In re:

Bridge Global Absolute Return Fund SPC               Chapter 15

Debtor in a Foreign Proceeding.                      Case No.:

_____/

**DECLARATION OF ANGELA BARKHOUSE IN SUPPORT OF CHAPTER 15
PETITION FOR RECOGNITION OF FOREIGN PROCEEDINGS**

I, Angela Barkhouse, Managing Director of Quantuma (Cayman) Limited hereby declare

under penalty of perjury under the laws of the United States as follows:

1.      I am a joint liquidator and foreign representative of Brazen Sky Limited ("Brazen

Sky"), Aabar Investments PJS Limited ("Aabar-BVI"), Tanore Finance Corporation ("Tanore"),

Blackstone Asia Real Estate Partners Limited ("Blackstone"), Vasco Investment Services SA

("Vasco"), Selune Limited ("Selune"), Pacific Rim Global Growth Limited ("Pacific Rim") and

Affinity Equity International Partners Limited ("Affinity") (collectively the "BVI Companies") all

incorporated under the laws of the British Virgin Islands; and joint official liquidator and foreign

representative of Bridge Global Absolute Return Fund SPC ("Bridge Global Fund"), a company

2

incorporated under the laws of the Cayman Islands (all companies listed above, collectively, the "Debtors").

2.      I am over the age of 18 and I am duly authorized to make this declaration acting in my capacity as joint liquidator of the Debtors. Where the matters stated in this declaration are statements of fact that are within my personal knowledge, they are true. Where the matters stated in this declaration are statements of fact that are not within my personal knowledge, they are derived from documents and/or information obtained through the joint liquidators' investigations (as described below) and are true to the best of my knowledge, information, and belief. If called upon, I could testify as to all matters set forth in this declaration.

3.      I make this Declaration in support of the Motion *for Order Granting Recognition of Foreign Main Proceeding Pursuant to §§ 1515 and 1517 of the Bankruptcy Code* (the "Motion") seeking recognition of the Debtors' liquidations under Chapter 15 of Title 11 of the United States Code (the "Bankruptcy Code").

4.      The BVI Companies are in liquidation under the laws of the British Virgin Islands (the "BVI") pursuant to Sections 159(2) and 162(1) of the BVI's Insolvency Act 2003 (the "BVI Insolvency Act"). Helen Janes, Group Head of Finance of Hyperion Risk Solutions Limited (BVI), Carl Jackson of Quantuma Advisory (UK) and I were appointed as joint liquidators (the "JLs").[1]

5.      Brazen Sky was placed into voluntary liquidation in December 31, 2021 by qualifying resolutions passed by their respective members, resolving for the (i) wind-up of the Debtors; and (ii) appointment of the JLs.

6.      Aabar-BVI, Tanore, Blackstone, and Affinity were placed into liquidation by Orders of the BVI High Court of Justice pursuant to section 218 of the BVI Business Companies

---

[1]    *See* **Comp. Ex.1**.

Act 2004 ("BCA 2004").[2]  Vasco, Selune, and Pacific Rim were placed into liquidation by an Order of the BVI High Court of Justice on July 5, 2022 pursuant to section 217 of the BCA 2004.

7.      Bridge Global Fund is a Cayman Islands company that was placed in liquidation pursuant to sections 92(d) and 92(e) of the Cayman Islands' Companies Act (2022 Revision) ("Cayman Companies Act") pursuant to a winding up order (the "Cayman Order") entered by the Grand Court of the Cayman Islands on May 5, 2022.  The Cayman Order also appointed George Kimberley Leck and I as the joint official liquidators (the "JOLs") of Bridge Global Fund. I shall refer to the JLs and the JOLs collectively as "the Liquidators".

8.      All the orders commencing the Debtors' insolvency and appointing their respective Liquidators are attached hereto as **Composite Exhibit "1"**.

## THE DEBTORS AND THEIR LIQUIDATION

### A.      The Debtors and their Purported Business

9.      The Debtors were part of the fraud perpetrated against 1 Malaysia Development Berhad ("1MDB"), a sovereign wealth fund owned by the Malaysian Ministry of Finance, in which numerous entities and individuals formed part of a network to divert and distribute funds to the fraudsters who orchestrated the fraud and to individuals and/or entities connected to them ("the Fraud").  An estimated total of US$ 7.65 billion was diverted and/or siphoned off from 1MDB and SRC International Sdn Bhd ("SRC Malaysia").

10.     Brazen Sky was incorporated in the BVI as a wholly owned subsidiary of 1MDB on July 12, 2012. Its purported purpose was to pursue investment and development projects for the economic benefit of Malaysia and its people, primarily through the issuance of various debt

---

[2]      The court issued the orders for Aabar-BVI, Tanore, and Blackstone on May 16, 2022, and the order for Affinity was issued on October 25, 2021.

securities to fund these projects. The Liquidators, based upon information received, believe Brazen Sky was the sole investor in six segregated portfolios[3] ("Segregated Portfolios") of the Bridge Global Fund. Brazen Sky was used as a conduit to divert and misappropriate funds as a part of the wider Fraud.

11.     Aabar-BVI was incorporated in the BVI on March 14, 2012, by two Emirati individuals, Khadem Abdulla Al Qubaisi ("Qubaisi") and Mohamed Ahmed Badawy Al-Husseiny ("Husseiny"). The JLs believe that Aabar-BVI was fraudulently presented as a subsidiary of Aabar Investments PJS ("Aabar-UAE"), a legitimate subsidiary of the Abu Dhabi government's investment fund International Petroleum Investment Company.  Qubaisi and Husseiny were respectively the Chairman and Chief Executive Officer of Aabar-UAE.  The JLs believe that Qubaisi and Husseiny incorporated Aabar-BVI to mislead third parties that it was a legitimate subsidiary of Aabar-UAE.

12.     Vasco was incorporated in the BVI on October 27, 2010. The JLs, based upon information received, believe the ultimate beneficial owner of Vasco is Qubaisi. The JLs believe that Qubaisi was a co-conspirator in the Fraud and used Vasco as a vehicle to divert funds misappropriated from 1MDB.

13.     Tanore was incorporated in the BVI on October 19, 2012. The JLs, based upon information received, believe that Tanore was a shell company with no legitimate business. Tanore acted as a conduit for funds flowing from 1MDB to other entities and individuals involved in the Fraud, including former Prime Minister of Malaysia, Mohb Najib bin Hj Abdul Razak ("Najib").

---

[3]     Bridge Diversified Strategies Fund A1, Bridge Diversified Strategies Fund A2, Bridge Global Resources Fund B1, Bridge Global Resources Fund B2, Bridge Emerging Ventures Fund C1, Bridge Emerging Ventures Fund C2.

Its beneficial owner is Eric Tan Kim Loong ("Eric Tan"), a business partner of Malaysian financier Low Taek Jho ("Jho Low") and one of the key individuals involved in the Fraud.

14.     Blackstone was incorporated in the BVI on November 1, 2010, under a different name. Its name may have been chosen to resemble a legitimate consortium of investment companies, the Blackstone Group, and a legitimate subsidiary of the Group, Blackstone Real Estate Partners Limited, which is incorporated in the United Kingdom. The JLs, based upon the Department of Justice ("DOJ") filings, believe that Blackstone is beneficially owned by Eric Tan. Blackstone was a key conduit for funds flowing in the Fraud from 1MDB to the individuals involved. It also received money diverted from SRC Malaysia.

15.     Selune was incorporated in the BVI on August 19, 2010. Based upon information in the public domain, and from DOJ filings, the JLs believe the ultimate beneficial owner of Selune is Jho Low. The JLs, also believe Selune received funds from many bank accounts around the world and facilitated onward passage of those funds to additional accounts, many of which were maintained in connection with a specific asset purchase.

16.     Pacific Rim was incorporated in the BVI on April 16, 2009. Pacific Rim was formed to operate as an investment fund.  However, the JLs, based upon DOJ filings, believe it instead served as a vehicle for the Fraud.  It received hundreds of millions of dollars from SRC International (Malaysia) Limited ("SRC-BVI"), a BVI-incorporated company and subsidiary of SRC Malaysia over which the Liquidators are also appointed,[4] and funneled these funds to other third parties.

---

[4]     This Court has recognized SRC-BVI's insolvency proceeding under Chapter 15.  This proceeding is pending as Case No. 22-12656-RAM.

17.     Affinity was incorporated in the BVI on July 3, 2012. The JLs believed that Affinity was beneficially owned by Eric Tan and was established as a shell corporation to facilitate the transfer of funds between the fraudsters and their associates.  Information from Affinity's registered agent shows that the registered shareholders of Affinity are Singaporean residents. However, beneficial ownership documentation provided by Eric Tan to Affinity's bank indicates that he is in fact the ultimate beneficial owner of this company and its assets.

18.     Bridge Global Fund was incorporated under the laws of the Cayman Islands on August 8, 2012.  It was registered as a regulated mutual fund under the Mutual Funds Act of the Cayman Islands from November 15, 2013 until May 20, 2022, when the Cayman Islands Monetary Authority cancelled its mutual fund registration. The sole purpose of Bridge Global appears to have been to hold 14 segregated portfolios. At least six of these segregated portfolios (the "Segregated Portfolios") were used to facilitate the Fraud.  As explained below, the investment from Brazen Sky into the Bridge Global Fund is connected to the Fraud.

**B.     1MDB and Nature of the Schemes**

19.     The main force behind 1MDB's establishment was the then Prime Minister of Malaysia, Najib. Najib was Chairman of 1MDB from 2009 to 2016. He additionally served as Minister of Finance and therefore ultimately controlled 1MDB. Najib was removed as prime minister in 2018 and in 2020 was sentenced to 12 years in prison in Malaysia for corruption, money laundering, and abuse of power. Nabjib's appeal against conviction and sentence was rejected in December 2021, a further appeal to the Federal Court of Malaysia has recently been rejected too. He will stand trial for additional charges related to 1MDB.

20.     A second key individual and perpetrator of the Fraud is Jho Low, who exercised significant control over 1MDB without any formal role.  Criminal proceedings are ongoing against

Jho Low in the United States of America ("USA") and Malaysia.  He is a fugitive and is reported by the media to be in China or Hong Kong.

21.     The investigations conducted by the Department of Justice ("DOJ")[5] identified four main stages to the Fraud, known as the "Good Star" phase, the "Aabar-BVI" phase, the "Tanore" phase and the "Options Buyback" phase.  The Debtors are involved in one or more of these phases.

### i.   *Links to the "Good Star" Phase of the Fraud*

22.     The "Good Star" phase of the fraud relates to a fraudulent joint venture between 1MDB and Petro Saudi Holdings (Cayman) Ltd ("PetroSaudi Cayman"), a subsidiary of PetroSaudi International ("PetroSaudi UAE").  In summary, in 2009, 1MDB agreed to invest US$ 1,000,000,000 in cash for a 40% equity stake in a joint venture company (the "JV") with a Cayman Islands subsidiary of PetroSaudi International ("PetroSaudi Cayman"), in exchange for PetroSaudi Cayman transferring energy assets to the JV.   1MDB only partially complied with the purported agreement as it only transferred US$ 300,000,000 to the JV's bank account. However, the remaining US$ 700,000,000 was diverted by 1MDB to the account of Good Star Limited ("Good Star"). Good Star is a Seychelles company, believed to be owned by Jho Low, that facilitated the Fraud. In fact, more than US$ 1,000,000,000 was diverted through the Good Star Account, and these transferred involved many of the Debtors. Accordingly, the JLs believe Good Star is another company set up to receive fraudulent funds for onward distribution to Jho Low and his associates.

*Brazen Sky Involvement*

---

[5]     Information about the Fraud and how it was perpetrated has emerged through numerous investigations by the Liquidators.  The Trustee references the *United States of America v All Funds Held in Escrow by Clyde and Co. in the United Kingdom as Damages or Restitution in Petrosaudi v PDVSA, UNCITRAL Arbitration*, case no. 2:20-cv-8466 (C.D. Cal.), as reference for significant information regarding the scope and nature of the Fraud.

23.    To cover up the misappropriation of funds to Good Star, the investment in 1MDB PetroSaudi was restructured several times, involving a fraudulent valuation of the underlying assets of the JV. During first restructuring in June 2010, 1MDB sold back its 40% equity investment to 1MDB Petro Saudi.  1MDB Petro Saudi issued debt notes valued at US$ 1,200,000,000 for 1MDB's share in the JV.  Further, under a Murabaha Financing Agreement, 1MDB agreed to provide 1MDB Petro Saudi with a loan of US$ 1,500,000,000.  In September 2010, 1MDB PetroSaudi drew down US$ 500,000,000 from this facility, which was paid to the JV by 1MDB on September 14, 2010. From May to October 2011, a US$ 330,000,000 was diverted from 1MDB to a Swiss bank account held in the name of Good Star ("Good Star Account").  In June 2012, 1MDB restructured its investment again and exchanged the US$ 1,200,000,000 debt notes for a 49% shareholding in PetroSaudi Oil Services Limited ("PSOSL") with a call option to acquire the remaining 51% shareholding in PSOSL.  PSOSL was a wholly-owned subsidiary of PetroSaudi (UAE) which became embroiled in the Fraud.  PSOSL reportedly held net assets of only US$ 93,600,000 in 2012.  However, 1MDB purported its investment in PSOSL was worth some US$ 2,200,000,000.  1MDB initially held its stake in PSOSL through 1MDB International Holdings Limited ("1MIHL"), a BVI incorporated company.

24.    In September 2012, 1MDB further restructured its investment by causing 1MIHL to sell its equity stake in PSOSL to Bridge Partners International for consideration of US$ 2,318,000,000, by way of the Promissory Notes. 1MHL used the proceeds of the sale to subscribe for shares in Brazen Sky and authorized Brazen Sky to further reinvest the proceeds by subscribing for funds units in the Bridge Global Fund.  Through this series of restructures, the diversion of US$ 1,030,000,000 to Good Star had been concealed and 1MDB could claim that its investment, now held by Brazen Sky, was worth US$ 2,200,000,000.

9

25.    Accordingly, Brazen Sky was the beneficial owner of the investments in Bridge Global Fund and the Segregated Portfolios.  Brazen Sky is also a contingent or prospective creditor of Bridge Global Fund within the meaning of section 94(1)(b) of the Cayman Companies Act 2022. The documents and information the Liquidators have reviewed suggest that Brazen Sky most likely redeemed its investment in Bridge Global Fund in February 2015.

26.    Due to the nature of the Fraud, Brazen Sky does not possess full or accurate copies of documents related to Brazen Sky's investment/subscription for shares of the company and the Segregated Portfolio.  The Liquidators have made several attempts to obtain copies of documents relating to Brazen Sky's investment into the company/Segregated Portfolios from the voluntary liquidators of BSI Bank but are yet to receive this.

27.    1MDB subsequently used the purported value of the investments held by Brazen Sky to secure loans of US$ 975,000,000 which were diverted to companies and individuals involved in the Fraud.

*Bridge Global Fund Investment*

28.    The Liquidators believe that Bridge Global was established and operated for the purposes of advancing the "Good Star" phase and the "Options Buyback" phase of the Fraud.  On September 12, 2012 Brazen Sky subscribed for shares in the Bridge Global Fund (also referred to as the "Fund"), using assigned promissory notes, as follows: (1) Bridge Diversified Strategies Fund A1 Segregated Portfolio 463,600 shares for US$ 463,600,000; (2) Bridge Diversified Strategies Fund A2 Segregated Portfolio 417,240 shares for US$ 417,240,000; (3) Bridge Global Resources Fund B1 Segregated Portfolio 394,060 shares for US$ 394,060,000; (4) Bridge Global Resources Fund B2 Segregated Portfolio 440,420 shares for US$ 440,420,000; (5) Bridge Emerging Ventures

Fund C1 Segregated Portfolio 347,700 shares for US$ 347,700,000; (6) Bridge Emerging Ventures Fund C2 Segregated Portfolio 254,980 shares for US$ 254,980,000.

29.    It is believed that the only asset held by the Bridge Global Fund during the relevant period was the 49% shareholding of PSOSL. The Bridge Global Fund therefore remained linked to the value of PSOSL. 1MDB wanted PSOSL valued at US$ 2,400,000,000 so that it could claim its investment was profitable, despite PSOSL only holding assets worth US$ 93,600,000 and operating at a loss in 2012.  In and around August 2013, NRA Capital, a Singapore based equity research firm, eventually agreed to provide this valuation for a fee of US$ 300,000, which was paid by Affinity.

30.    In September 2013, Brazen Sky received dividends totaling US$ 198,774,140 from the Bridge Global Fund. It is unclear how these payments were generated, due to the loss-making assets underlying the Bridge Global Fund. The evidence that the Liquidators reviewed suggests that these payments were 1MDB funds diverted through Affinity to give the appearance that the Fund was profitable.

31.    The Liquidators have reviewed information which indicates that Brazen Sky's holding in PSOSL may have been transferred to a Curacao-based fund called Avalon Global Opportunity Fund B.V. ("Avalon").  The Liquidators are conducting further investigations to determine if this is the case.

*Selune Involvement*

32.    An account in the name of Selune ("Selune Account") was maintained at Rothschild Bank AG in Switzerland.  Jho Low represented to third parties that he was the beneficial owner of Selune and the Selune Account. Selune received and diverted funds during

both the "Good Star" and "Aabar-BVI" phases of the Fraud, receiving approximately US$ 140,000,000 and transferring on approximately US$ 112,000,000.

33.    Funds diverted through Selune were used to purchase various valuable assets, including two New York properties: the Time Warner Penthouse and Time Warner Storage Unit for a consideration of approximately US$ 30,000,000. The occupant of the property was identified as Low Hock Peng ("Larry Low"), Jho Low's father.

34.    The source of funds appears to commence with a US$ 55,000,000 transfer from the Good Star Account to an account held by a BVI-incorporated company called Abu Dhabi Kuwait Malaysia Investment Corp. ("ADKMIC"), which was controlled by Jho Low.  A majority of these funds were transferred to an account held in the name of Larry Low. Further, on the same day, approximately US$ 30,000,000 was transferred from Larry Low's account to the Selune Account. The DOJ maintains these funds were subsequently used to acquire the Time Warner properties. On March 19, 2020, the US District Court for Central California entered an amended consent judgment of forfeiture for these two properties.

35.    Based on the information reviewed, the Liquidators believe that Selune transferred funds traceable to the US$ 700 million transferred by 1MDB to the Good Star Account, to fund Jho Low's acquisition of two properties located in Mayfair, London: a penthouse apartment in Stratton House and another flat a few doors down from the Penthouse. On November 3, 2019, the US District Court for Central California entered an amended consent judgment of forfeiture for these two properties.

*Vasco Involvement*

36.     On February 20, 2013, US$ 20,750,000 was wired to an account held in the name of Vasco at Bank Privée Edmond de Rothschild in Luxembourg ("Vasco Account") from the Good Star Account.

### ii.   Links to the "Aabar-BVI" Phase of the Fraud

37.     The "Aabar-BVI" phase involved the misappropriation of the proceeds of bond issues arranged and underwritten by Goldman Sachs ("Goldman"). The JLs believe that approximately US$ 1,367,000,000 was diverted from 1MDB during this phase of the Fraud. There were two tranches of bond issues: Project Magnolia, which comprised US$ 1,750,000,000 issued by 1MDB subsidiary 1MDB Energy Limited ("1MDB Energy") in May 2012, and Project Maximus, US$ 1,750,000,000 issued by 1MDB Energy (Langat) Limited ("1MELL") in October 2012. Both bond offerings were guaranteed by International Petroleum Investment Company ("IPIC"), an investment fund wholly owned by the government of Abu Dhabi, United Arab Emirates ("UAE"), in return for options granted to Aabar-UAE to acquire interests in the assets to be acquired with the bond proceeds. These bond issues were nominally intended to finance 1MDB's acquisition of energy and natural resources assets. Instead, a substantial proportion of the proceeds were diverted through Aabar-BVI to Blackstone.

### Aabar-BVI Involvement

38.     Qubaisi and Husseiny founded Aabar-BVI, but they were also respectively the Chairman and Chief Executive Officer of Aabar-UAE.  The JLs believe the name of Aabar-BVI was chosen to suggest that Aabar-BVI was a legitimate subsidiary of Aabar-UAE or IPIC. Although, Aabar-BVI is declared in corporate records to be a legitimate subsidiary of Aabar-UAE, it is asserted by both the DOJ and Aabar-UAE that no such relationship existed. Indeed, on April 11, 2016, IPIC and Aabar-UAE issued a statement to the London Stock Exchange that Aabar-BVI

was not an entity within either corporate group. Following an internal investigation by IPIC, Qubaisi was removed from his post in 2015 and in June 2019, he was jailed for 15 years for corruption.

39.     Qubaisi and Husseiny opened an account at BSI Bank in Lugano, Switzerland in the name of Aabar-BVI ("Aabar-BVI Account"). The JLs believe that they falsely represented to BSI Bank that Aabar-UAE was the beneficial owner of the Aabar-BVI Account. At the time of Aabar-BVI's incorporation, Falcon Private Bank Limited ("Falcon Bank") was wholly owned by Aabar-UAE and Husseiny was Falcon Bank's Chairman. Both 1MDB Energy and 1MELL held bank accounts at Falcon Bank (respectively, "1MDB Energy Account" and "1MELL Account").

40.     Both Project Magnolia and Project Maximus offering circulars represented that a portion of the proceeds would be used to acquire power assets and the remainder were designated for general commercial purposes.

41.     On May 21, 2021, the closing date for the Project Magnolia bonds, proceeds were transferred to the 1MDB Energy Account. On the next day, one third of the net proceeds of the bond sale were wired from this account to the Aabar-BVI account. Similarly, On October 19, 2012, the closing date for the Project Maximus bonds, 1MDB directed that the net proceeds of the sale be wired to the 1MELL Account. A portion of the proceeds were wired from the 1MELL Account to a Citibank-Singapore account belonging to Genting Power, in connection to the power asset purchases. On the same day, 1MDB wire transferred what constituted half of the proceeds to the Aabar-BVI Account.

42.    Neither the Project Magnolia nor the Project Maximus offering circulars represented that any portion of the capital raised would be diverted to Aabar-BVI, let alone approximately 40% of the net proceeds of the two bond sales.

43.    The subsequent activity of the Aabar-BVI Account was inconsistent with the purported operation of a legitimate subsidiary of Aabar-UAE or IPIC.  The JLs believe that the Aabar-BVI Account was used to conceal and facilitate the fraudulent diversion of funds to subsidiary shell companies and was used to collect and distribute the proceeds of fraud to officials at IPIC, Aabar, and 1MDB.

44.    From June to November 2012, US$ 238,000,000 was transferred from the Aabar-BVI Account to an account held in the name of Red Granite Capital Limited (BVI) ("Red Granite Capital").  Red Granite Capital was a BVI-incorporated company owned and controlled by Riza Shahriz Bin Abdul Aziz ("Aziz"), Najib's stepson.

45.    Aziz used the misappropriated funds to acquire the following interests:

a.    More than US$ 94,000,000 for three pieces of real estate in New York City, Beverly Hills, and London.

b.    Red Granite Pictures, a motion picture production company in the USA. The misappropriated funds were ultimately used to produce the motion picture "The Wolf of Wall Street". On March 8, 2018, the United Stated District Court for the Central District of California entered a consent judgment of forfeiture in the U.S. action seeking forfeiture of all right to and interest in "The Wolf of Wall Street" belonging to Red Granite Pictures.

c.    At least US$ 5,489,760 was used to purchase movie posters and film memorabilia.

d.   Transfers totaling US$ 110,500,000 was made to an account held in the name of Alsen Chance Holdings Limited, beneficially owned and controlled by Eric Tan, of which US$ 13,000,000 was used to fund gambling expenses at a Las Vegas Casino for Aziz, Low, and Eric Tan; and

e.   US$ 21,000,000 was used to acquire artwork and real property for Low.

46.   Based upon the foregoing, the Liquidators believe that Aabar-BVI was used to collect and distribute the proceeds to officials at IPIC, Aabar-UAE, and 1MDB. The JLs further believe that the Aabar-BVI Account was used to conceal and facilitate the fraudulent diversion of funds to subsidiary shell companies.

*Blackstone Involvement*

47.   Blackstone received and diverted funds from the "Aabar-BVI" phase of the Fraud totaling approximately US$ 1,100,000,000.

48.   Between May and December 2012, a total of approximately US$ 637,000,000 was sent from Aabar-BVI Account to a Standard Chartered Bank account in Singapore held in the name of Blackstone ("Blackstone Account"). Eric Tan was the beneficial owner of the Blackstone Account. Additionally, Curacao-incorporated investment funds, Cistenique Investment Fund ("Cistenique") and Enterprise Emerging Markets Fund ("Enterprise"), were used to channel US$ 464,285,000 of funds from Aabar-BVI to Blackstone.

49.   The Blackstone Account was emptied shortly after it received funds from Aabar-BVI. In February 2013, the Liquidators understand that the account balance was zero and there were no further transactions after that date. The funds Blackstone received from Aabar-BVI were distributed as follows:

a.   US$ 472,750,000 to the Vasco Account.

16

b.  A total of US$ 66,600,000 to the bank accounts of two entities owned by Husseiny, Rayan Inc (Germany) and MB Consulting LLC (Texas).

c.  At least US$ 30,000,000 to Najib's bank account held at AmBank in Malaysia.

d.  US$ 5,000,000 to the Swiss bank account of Jasmine Loo, General Counsel and Executive Director of Group Strategy at 1MDB.

*Vasco Involvement*

50.    Vasco was used as a conduit for fraud during the 'Aabar-BVI phase'. The JLs believe that Qubaisi used Vasco as a shell company to divert funds misappropriated from 1MDB. Qubaisi used a proportion of those funds to purchase assets. The ultimate destination of the remaining funds is not known. The JLs believe Vasco received and diverted funds from the "Aabar-BVI" phase of the Fraud totaling at least US$ 493,500,000[6].

51.    Based on DOJ filings, between approximately May 2012 and November 2012, about US$ 472,750,000 were sent from the Blackstone Account to the Vasco Account.  Each transfer was executed within days after the Blackstone Account received funds from Aabar-BVI. These transactions are consistent with the JLs' belief that Aabar-BVI, Blackstone, and Vasco had no legitimate business activity and were used as shell companies to divert funds for the personal benefit of the fraudsters.

52.    Qubaisi and associates, including Jho Low, used the funds diverted to the Vasco Account to purchase or attempted to purchase, luxury goods including real property in Manhattan and Beverly Hills, an aircraft, and a yacht.  These assets demonstrate that Qubaisi and associated parties used the Vasco Account to deposit and disperse misappropriated funds.  The known

---

[6]   This figure comprises the Blackstone funds and $20.75 million from Good Star.

confiscated assets account for US$ 98,000,000 of the approximately US$ 472,500,000 diverted to Vasco. The ultimate whereabouts of the remaining funds are not known.

53.　　The JLs believe Qubaisi purchased a penthouse in Walker Tower, a condominium complex in New York City using funds misappropriated from 1MDB. Qubaisi also purchased the Laurel Beverly Hills Mansion using funds misappropriated from 1MDB. On May 6, 2020, the US District Court for the Central District of California entered a consent judgment of forfeiture for the Walker Tower Penthouse and the proceeds of the sale of the Laurel Beverly Hills Mansion.

54.　　Between March 2013 and September 2015, Qubaisi transferred funds totaling over US$ 15,000,000 held in the Vasco Account to further entities which he controlled and beneficially owned. He then used these funds to purchase a Gulfstream jet on December 31, 2013 through a company he beneficially owned, Lifford Finance S.A. ("Lifford").

55.　　In August 2015, Qubaisi sold the Gulfstream jet for approximately US$ 65,600,000. On August 10, 2015, the sale proceeds were transferred to an account held in Lifford's name ("Lifford Account"). On or around August 28, 2015, Qubaisi transferred approximately US$ 65,000,000 from the Lifford Account to another account he controlled and then transferred this sum to the Vasco Account. On or around September 2015, Qubaisi transferred approximately US$ 65,000,000 from the Vasco account to another account in the name of Eagle Strategic Investment Fund (B) ("Eagle Strategic Account"). At the date of the US DOJ filing, the Eagle Strategic Account had a balance of approximately US$ 27,200,000.

56.　　Information in the US DOJ filing shows approximately US$ 47,000,000 remains deposited in the Vasco and Eagle Strategic accounts.

57.    In August 2012, Oceanus Maritime assumed ownership and possession of the yacht The A+ (formerly known as M/Y Topaz) based upon a 2008 contract for approximately US$ 688,000,000.  Oceanus Maritime funded the purchase through a EUR 400,000,000 loan extended by Deutsche Bank.

58.    Upon the US DOJ filings, the JLs believe that misappropriated funds totaling US$ 160,930,752 were used to pay back this loan and thus obtain partial ownership of the A+.  The JLs believe funds passed from the Vasco Account through another account and then to an account held by Oceanus Maritime.

*Affinity Involvement*

59.    Affinity was beneficially owned by Eric Tan and appears to have been established as a shell corporation too and was used to receive, and distribute, funds from SRC Malaysia, as well as in the "Tanore", "Aabar-BVI" and "Options Buyback" phases of the Fraud. On September 10, 2013, Affinity received US$ 25,500,000 from Aabar-BVI.  Most of these funds were subsequently distributed by Affinity, in large part to Red Granite Investment Holdings LLC, a company owned by Aziz, which received US$ 11,500,000 and to Eric Tan's companies Blackrock Commodities (Global) Limited ("Blackrock") and Platinum Global Luxury Services Limited ("Platinum Global"), , which together were paid US$ 6,250,000.

*Selune Involvement*

60.    Jho Low used a portion of the funds derived from the "Aabar-BVI" phase to purchase two artworks.  US$ 110,000,000 was transferred from Jho Low's BSI Bank account to Selune and paid on to 'One Universe' accounts believed by the JLs to be controlled by Jho Low and his associates. On November 14, 2012, Jho Low purchased Campbell's Soup Can painting, by

Andy Warhol for US$ 6,000,000 and, on December 14, 2012, he purchased Vetheuil au Soleil painting, by Claude Monet for US$ 9,700,000, using these funds.

61.      The ultimate whereabouts of the funds believed to be left in the Selune Account following the transfers to various entities is unknown.  The ultimate whereabouts of the funds remaining in the One Universe Art Trust Account is unknown. The remaining funds diverted to Selune during this phase remain unaccounted for.  The JLs seek to trace and recover these funds.

### iii. Links to the "Options Buyback" Phase of the Fraud

#### The First Loan

62.      In 2014, 1MDB approached Deutsche Bank to secure funding for a fraudulent scheme to purportedly acquire the options granted to IPIC for guaranteeing the Project Magnolia and Project Maximus bonds.  On May 26, 2014, Deutsche Bank agreed a bridge loan facility of US$ 250,000,000 to 1MDB's subsidiary, 1MDB Energy Holdings Limited ("1MEHL") ("Deutsche Bank Bridge Loan"). The purpose of this loan was to refinance the original Deutsche Bank Bridge Loan and acquire the options granted to IPIC for their guarantee of the bonds issued in the "Aabar-BVI" phase.  This formed the first tranche of funds obtained from Deutsche Bank in what the DOJ classify as the "Options Buyback" phase.

63.      On May 28, 2014, US$ 239,940,000 in proceeds from the Deutsche Bank Bridge Loan were transferred into a bank account held in the name of 1MEHL at Falcon Bank in Zurich ("1MEHL Account").

#### Aabar-BVI Involvement

64.      US$ 175,000,000 was transferred from the 1MEHL Account to the Aabar-BVI Account.  On May 30, 2014, US$ 155,000,000 was transferred from the Aabar-BVI Account to an

account held in the name of Affinity Equity at DBS Bank Limited in Singapore ("Affinity Account").

*Affinity Involvement*

65.    Of the funds transferred from Aabar-BVI to the Affinity Account, US$ 142,000,000 was transferred from the Affinity Account to an account held in the name of Alpha Synergy Limited ("Alpha Synergy"). Jho Low was the beneficial owner of Alpha Synergy. On June 3, 2014, Jho Low transferred these funds to his personal bank account and then used almost the full amount to acquire a 300-foot luxury yacht, called the Equanimity. It was subsequently confiscated by the DOJ.

66.    On June 18, 2014, Aabar-BVI paid a further US$ 19,000,000 of the Deutsche Bank Bridge Loan proceeds to Affinity. Different portions of the funds were then transferred to Eric Tan and his companies, Alpha Synergy, and an entity called Aabar Investments PJS Limited, incorporated in the Seychelles ("Aabar-Seychelles").  It is believed that Husseiny created Aabar-Seychelles, similarly to Aabar-BVI, to give the impression it was a legitimate subsidiary of Aabar-UAE or IPIC.

67.    In September 2014, loan proceeds were also diverted to the bank account of Aabar-Seychelles, which were then diverted to Affinity. The funds were further paid out to Eric Tan and his companies Blackrock, Platinum Global and TKIL Global Investments Limited ("TKIL Global"); Alpha Synergy Limited, a company controlled by Jho Low; and Tasameem, a company controlled by Qubaisi.

68.    The Liquidators have been able to obtain bank statements from DBS Bank Limited for the Affinity Account for the period August 2013 to October 2014. Numerous payments out of the Affinity Account have been identified that require further investigation. Payments to seventeen

different recipients amount to US$ 258,218,816.  The recipients appear to be individuals and also companies incorporated in the BVI, Hong Kong and USA.

*The Second Loan*

69.    In August 2014, 1MDB sought an addition loan of US$ 975,000,000 from Deutsche Bank to refinance the existing Deutsche Bank bridge loan facility and to acquire the options granted to IPIC for guaranteeing the Project Magnolia and Project Maximus bonds.  This formed the second tranche of funds obtained from Deutsche Bank.

70.    A total of US$ 681,317,607 of the proceeds of this loan was transferred to an account at UBS AG in Singapore in the name of Aabar-Seychelles.

*Brazen Sky and Bridge Global Fund Involvement*

71.    Some of the second loan proceeds were circulated in an elaborate series of transactions intended to create the false appearance that Brazen Sky was 'redeeming' its investments in the Segregated Portfolios.  Throughout 2014, Brazen Sky received seven incoming cash transfers from the Bridge Global Fund, which were allegedly the proceeds of the sale of the Bridge Global Fund units.  These funds were in fact money which 1MDB had borrowed from Deutsche Bank, diverted to Aabar-Seychelles and cycled several times through a series of overseas bank accounts, including Bridge Global and Brazen Sky, before being returned to Aabar-Seychelles.

### iv. Links to the "Tanore" Phase of the Fraud

72.    The "Tanore" phase involved the misappropriation of the proceeds of a further bond issue arranged and underwritten by Goldman.  Once again, the proceeds were misappropriated and fraudulently diverted to bank accounts in Switzerland and Singapore.

73.     On March 12, 2013, 1MDB formed a joint venture with Aabar-UAE named Abu Dhabi Malaysia Investment Company ("ADMIC").  The intended purpose of ADMIC was to finance strategic development initiatives in both Malaysia and Abu Dhabi. Goldman was retained to assist in raising capital for ADMIC via a further bond sale, known as "Project Catalyze".  The bonds were issued by 1MDB Global Investments Limited ("1MGIL"), a wholly-owned subsidiary of 1MDB incorporated in the BVI.

74.     On March 19, 2013, the closing date for the Project Catalyze bond sale, the account held in the name of 1MGIL at BSI Lugano ("1MGIL Account") received the proceeds of the sale. The JLs believe that approximately US$ 1,260,000,000 from the funds was diverted to overseas accounts controlled by Eric Tan and held in the name of various entities, as set out below.

*Tanore Involvement*

75.     In May 2013, 1MGIL transferred US$ 1,590,000,000 from the 1MGIL Account to accounts belonging to Cistenique and Enterprise, and Devonshire Capital Growth Fund ("Devonshire"), an investment fund located in the BVI (the "Overseas Funds").  Enterprise and Cistenique were used to divert funds traceable to the Project Maximus bond proceeds during the Aabar-BVI phase.

76.     On November 2, 2012, Eric Tan opened an account in the name of Tanore at Falcon Bank ("Tanore Account").  Husseiny, the then Chairman of Falcon Bank, was listed in bank records as the 'referrer' for the account.  On March 21 and 22, 2013, the Overseas Funds transferred funds to the Tanore Account. Additionally, on March 21, 2013, the Devonshire account transferred further funds to an account controlled by Eric Tan ("Granton Account") which were

then transferred to the Tanore Account on that same day. A few days later, Tanore transferred a portion back to the Granton Account.

77.    On March 21, 2013, US$ 681,000,000 were transferred from the Tanore Account to an account owned by Najib. On August 26, 2013, US$ 620,010,715 was transferred back from a different account which was also owned by Najib to the Tanore Account.

78.    The Liquidators believe that the movement of funds between accounts belonging to different legal entities which had the same beneficial owner served no commercial purpose but were only intended to obscure the ultimate beneficial ownership of the funds by "layering" the transactions.

79.    Eric Tan opened an account at Christie's Art Auction House, New York in early May 2013 in the name of Tanore. At a series of auctions, Tanore purchased works, including but not limited to: (1) An unnamed work by Mark Ryden for US$ 714,000 on May 13, 2013; (2) an unnamed work by Ed Ruscha for US$ 367,500 on May 13, 2013; (3) *Dustheads* by Jean-Michel Basquiat for US$ 48,843,750 on May 15, 2013; (4) *Untitled – Standing Mobile* by Alexander Calder for US$ 5,387,750 on May 15, 2013 and; (5) *Tic Tac Toe* by Alexander Calder for US$ 3,035,750.

80.    On June 4, 2013, funds were transferred from the Tanore Account at Falcon Bank to an account maintained by Christie's ("Christie's Account"). On June 28, 2013, Tanore acquired two further works of art at a private auction organized by Christie's: *Concetto spaziale, Attese*, by Lucio Fontana; and Untitled (Yellow and Blue) by Mark Rothko. On July 3, 2013 and September 9, 2013, funds were wired from the Tanore Account to the Christie's Account totaling the amount the two artworks cost.

81.     These artworks were subsequently given to Jho Low.  In correspondence, Eric Tan represented that these transfers were gifts. The JLs believe that, given Eric Tan gave artworks cumulatively worth in excess of US$ 100,000,000 to Jho Low, Eric Tan was acting as Jho Low's nominee when purchasing art through the Tanore Account, to obscure the ultimate beneficial ownership of the funds.

82.     Based upon the foregoing, the JLs believe that Tanore was used to collect and distribute the proceeds of the Project Catalyze bond proceeds to Eric Tan, Jho Low, and affiliated parties.

*Pacific Rim Involvement*

83.     According to the DOJ investigation, Pacific Rim was one of several overseas funds which was specifically marketed by employees at the Singapore branch of BSI Bank to 1MDB management, as a confidential means of transmitting funds to a designated third party. Evidence of BSI Bank employees proposing the use of theses overseas funds for these purposes has been identified by the DOJ.

84.     The funds received by Pacific Rim derived from two separate elements of the Fraud: (1) the fraudulent diversion of loans made to SRC Malaysia for the purpose of foreign investment; and (2) the laundering of 1MDB funds arising from other phases of the Fraud, particularly the 'Tanore phase'. The JLs believe these funds were mixed in the BSI Bank account held by SRC-BVI, a subsidiary of SRC Malaysia prior to being transferred to Pacific Rim.

85.     On September 5 and 6, 2013, the SRC-BVI BSI Account received funds from Cistenique and Enterprise.   After, two wires were sent from the SRC-BVI BSI Account to Pacific Rim. The JLs believe that these funds received by SRC-BVI from Cistenique and Enterprise were

partially derived from the KWAP loan facility and partially from 1MDB funds, which were misappropriated during the "Tanore" phase.

### v.  Links to SRC-Malaysia Fraud

86.    SRC Malaysia's planned investments in energy and natural resources assets were capitalized through loan facilities advanced by the Kumpalan Wang Persaraan (Diperbadankan) ("KWAP"), a statutory body which manages the pension fund for public employees in Malaysia. SRC-BVI, a subsidiary of SRC Malaysia, over which the Liquidators are also appointed, received US$ 835,000,000 of the KWAP loans. These funds were due to be invested in energy and natural resources assets.  However, these funds were never used for their intended, authorized purpose and instead were distributed from the SRC-BVI BSI Account to the Overseas Funds.

87.    It can be ascertained that approximately US$ 342,346,940 of the proposed investment funds were distributed from the SRC-BVI BSI Account to Cistenique, and approximately US$ 481,020,411 was distributed to Enterprise. In total, US$ 823,367,351 of the US$ 835,000,000 KWAP funds was paid to Cistenique and Enterprise.

*Blackstone Involvement*

88.    The funds received by Blackstone derived from the laundering of 1MDB funds arising from the "Aabar-BVI" phase of the Fraud and also the fraudulent diversion of loans made to SRC Malaysia for the purpose of foreign investment.

89.    Based on the bank records of Cistenique and Enterprise, shortly after funds were received from SRC-BVI, similar amounts were transferred to Blackstone, for a total of US$ 506,900,000.  Based on existing transaction patterns, the Liquidators believe that Cistenique paid another portion of funds to Blackstone. If so, this would mean the total funds from SRC-BVI paid to Blackstone via Cistenique and Enterprise is US$ 806,900,000. It is not known how the SRC-

BVI funds received by Blackstone were subsequently utilised, the whereabouts of these funds are unknown.

*Pacific Rim and Affinity Involvement*

90.    On September 10, 2013, Pacific Rim paid out funds to the Affinity account. As set out above, these funds had previously passed through the SRC-BVI BSI Account and comprised funds from the "Tanore" phase and also funds from SRC Malaysia.

91.    On the same day, two payments totaling US$ 198,774,140 were made by Affinity to Vistra Asia Limited for the benefit of the Bridge Global Fund. Vistra Asia Limited was the fund administrators for the Bridge Global Fund. The Liquidators have traced these funds into the bank account of Brazen Sky, where they appear purportedly as dividends from the Bridge Global Fund. The Liquidators maintain that these funds were diverted from 1MDB and SRC funds through the network of companies to give the false, impression that the Bridge Global Fund was profitable.

92.    On December 24, 2013, Affinity received further funds from Pacific Rim in the sum of US$ 11,950,000. These funds were distributed on two days later, mostly to companies controlled by Eric Tan, including Blackrock, Platinum Global, and TKIL, which between them received US$ 10,480,000.

93.    Based upon the JLs' review of the SRC-BVI BSI Account and the Affinity Account, there is a discrepancy of US$ 4,912,739 between the funds received by Pacific Rim and transferred to the Affinity Account. The whereabouts of these funds are unknown.

**C.    Lead Up to the Debtors' Liquidation**

94.    In 2013 and 2014, the media covered activities of 1MDB, including its connection with SRC Malaysia and SRC-BVI.  In 2015, the international press began reporting that 1MDB and SRC Malaysia were under international investigation due to allegations of fraud and money laundering.  Until 2016, most investigation attempts in Malaysia were thwarted by the Malaysian government, as the Prime Minister of Malaysia, Najib, established 1MDB with Jho Low.

95.    In 2018, Najib was removed as Prime Minister and Malaysian authorities began to investigate the Fraud.  Najib and other co-conspirators were subject to criminal and civil proceedings related to the misappropriation of 1MDB funds in Malaysia and abroad.  Malaysian authorities sought cooperation from global law enforcement, including the DOJ, which actively investigated and seized some assets in relation to the Fraud from 2016 onwards.[7]

96.    Civil proceedings have been brought by the Liquidators and companies related to the Debtors in the BVI, Cayman Islands, Curacao, Barbados, USA, Hong Kong, Singapore and Switzerland to recover assets and claim damages.  While the general details of the Fraud have been widely reported on, the full extent of the Fraud is unknown.  The liquidation of the Debtors forms part of an international effort to trace and recover funds misappropriated through 1MDB and SRC Malaysia.

**D.    The Debtors' Liquidations**

97.    Brazen Sky was placed into voluntary liquidation and the JLs were appointed pursuant to the BVI Insolvency Act.  Aabar-BVI, Tanore, Blackstone, Vasco, Selune, Pacific Rim, and Affinity were placed into liquidation pursuant to the BCA 2004.  *See* **Comp. Ex. 1**. The JLs

---

[7] As part of its efforts, the DOJ brought actions against Jho Lo Riza Aziz, AL Qubaisi, Al Husseiny and Goldman Sachs, for their roles in the Fraud.  The Liquidators suspect that despite these efforts, there are companies and trusts that are yet to be uncovered related to the Fraud.

were appointed over the BVI Companies and have been administering their assets and affairs.

98.     The Grand Court appointed the JOLs over Bridge Global Fund pursuant to sections 92(d) and 92 (e) of the Cayman Companies Act as part of the global asset recovery efforts.

99.     Since their appointment, the JOLs have been conducting Bridge Global Fund's activities out of (or primarily out of) the Cayman Islands and the activities of all the BVI Companies out of Cayman and BVI.

100.     The BVI Insolvency Act authorizes the JL's to administer the assets and affairs of the BVI Companies, and to run their businesses during the course of their liquidation. Once a liquidation commences, the liquidator is an officer of the BVI Court and subject to the supervision of that Court. A liquidator has the power to take possession of, protect and realise the assets of the debtor and distribute the assets or the proceeds of realisation of the assets in accordance with the provisions of the BVI Insolvency Act.

101.     The Cayman Companies Act contains similar provisions to the BVI Insolvency Act. The Cayman Companies Act authorizes the JOL's to act jointly and severally and to control the affairs and assets of a company in official liquidation. Upon the appointment of official liquidators to a company the powers of the directors and members cease, save for very limited circumstances. The official liquidators are officers of the Grand Court.

102.     The JLs provided notice by publication of the BVI Companies liquidations and their appointment and invited creditors to submit claims in the liquidation of the BVI Companies. The JLs published a notice in the BVI Government Gazette and the BVI Beacon newspaper, save in the case of Selune, Aabar-BVI, Tanore and Blackstone, the BVI High Court of Justice dispensed with the requirement for these companies to be advertised, pursuant to section 165 of the Insolvency Act. The JLs also filed with the BVI Registrar of Companies and served on the

company's registered agents, other than when the court dispensed with such requirements. To the best of the JLs' knowledge and belief, this is the most appropriate jurisdiction to notify to ensure that the knowledge of the liquidation of the BVI Companies reaches all potential creditors of the Debtors.

103.    Pursuant to the requirements of the Cayman Companies Act the JOLs published a notice in the Cayman Islands Gazette on May 11, 2022, giving notice of their appointments, convening a meeting of creditors on May 27, 2022, and the liquidation of the Bridge Global Fund, and further inviting creditors to submit their claims for consideration in the liquidation.

104.    Since their appointment, the Liquidators have taken a number of steps to identify, secure and take into their possession and control the assets and records of the Debtors.

105.    Upon their appointment, the Liquidators have also managed the affairs, business, and property of the Debtors in order to achieve an orderly wind-down and facilitate the recovery of assets for the benefit of creditors.  Actions that the Liquidators may take or are taking include but are not limited to: (i) continuing business as usual for trading operations (but, for the avoidance of doubt, not the origination of new business), obligor receipts, and payments to the BVI Companies or Bridge Global Fund as principal, where appropriate arrangements are put in place; (ii) agreeing and finalizing the form of support with investors to recover costs incurred in connection with the Debtors continuing efforts to assist with recovery of assets; (iii) dealing with any defaulting obligors and taking steps to protect the position of the Debtors or investors; (iv) continuing assistance with subsidiaries to wind up or facilitate a sales process, as applicable, and realize value where possible; (v) continuing to liaise with agents regarding the disposal of remaining assets; (vi) paying liquidation expenses; (vii) agreeing on the claims of the unsecured and preferential creditors and payment of a dividend, if future realizations make this feasible; (viii)

paying distributions to the secured creditors of the Debtors; (ix) finalizing the Debtors' tax affairs, including completion of corporation tax and VAT returns and settlement of any post liquidation liabilities, where relevant; and (x) complying with statutory and regulatory obligations, including investigations.

### Basis for Recognition Under Chapter 15 of the Bankruptcy Code

106.    The Liquidators continue to investigate the Debtors' business activities and are taking steps to pursue various leads to localize and realize potential asset recovery opportunities for the benefit of all creditors.  As part of these efforts the Liquidators seek recognition of the Debtors' Liquidation in the USA to obtain discovery relating to transactions involving the Debtors to assist in the tracing of estate assets and, to the extent necessary, other entities relating to the Debtors.

### Section 1515(c) Disclosure

107.    Further, I am not aware of any pending foreign proceedings, as that terms is defined in 11 U.S.C. § 101(23), with respect to the Debtors other than this Chapter 15 filing.

### Rule 1007(a)(4) Disclosures

108.    I hereby provide the following information in accordance with Rule 1007(a)(4) of the Federal Rules of Bankruptcy Procedure.

> a. Helen Janes of Hyperion Risk Solutions (BVI), Angela Barkhouse of Quantuma (Cayman) Limited, and Carl Jackson of Quantuma Advisory (UK) have been appointed as the joint liquidators of Brazen Sky Aabar-BVI, Tanore, Blackstone, Vasco, Selune, Pacific Rim, and Affinity.
>
> > i. The address of the JLs is the following:
> >
> > Attn: Helen Janes
> > Hyperion Risk Solutions (BVI)

The Folio Building
Road Town, Tortola VG1110
British Virgin Islands

Attn: Angela Barkhouse
10 Market St, #1174 Camana Bay
Grand Cayman KY1-9006
Cayman Islands

Attn: Carl Jackson
Quantuma Advisory (UK)
Office D, Beresford House, Town Quay
Southampton SO14 2AQ
United Kingdom

c.  Angela Barkhouse and George Kimberley Leck of Quantuma (Cayman) Limited, have been appointed as the joint official liquidators of the Bridge Global Fund by an order of the Grand Court dated 5 May 2022.

    i.  The address of the JOLs is the following:

Attn: Angela Barkhouse
10 Market St, #1174 Camana Bay
Grand Cayman KY1-9006
Cayman Islands

Attn: George Kimberley Leck
10 Market St, #1174 Camana Bay
Grand Cayman KY1-9006
Cayman Islands

    ii. For purposes of this Chapter 15 proceeding, the Liquidators request that any correspondence be sent, in addition to the addresses provided above, to:

Attn: Gregory S. Grossman
Juan J. Mendoza
Jennifer Mosquera
Sequor Law, P.A.
1111 Brickell Avenue, Suite 1250
Miami, Florida 33131

32

d.   The Debtors are not parties to any litigation in the United States.  Further, though none of the Debtors is a party in the action styled as *United States v. All Funds on Deposit in Bank Privee Edmond de Rothschild Account Number '0610 and '1751*, pending in the United States District Court for the Central District of California as Case No. 2:20-cv-5912-DSF-PLA, I disclose this action as the government seeks forfeiture of funds contained in an account held in the name of Debtor Vasco located at Bank Privee Edmond de Rothschild in Luxembourg.

e.   I do not seek provisional relief, under 11 U.S.C. § 1519, against any person or entity at this time.

[Verification on next page]

## 28 U.S.C. § 1746 VERIFICATION

I, Angela Barkhouse, declare under penalty of perjury under the laws of the United States of America, 28 U.S.C. §1746, that I have the authority to make this Declaration; that I have read the foregoing Declaration; and that the facts and matters alleged and contained herein are true and correct to the best of my knowledge and belief, based upon my own personal knowledge of the facts involved and upon my review of the available documents pertaining to Brazen Sky, Aabar-BVI, Tanore, Blackstone, Vasco, Selune, Pacific Rim, Affinity and Bridge Global Fund.

Executed in George Town, Grand Cayman, Cayman Islands, on August 26ᵗʰ, 2022

By:  _____
       Angela Barkhouse

*COMPOSITE EXHIBIT "1"*

BRAZEN SKY LIMITED ("the Company")

BVI Co. Number 1723620

**WRITTEN RESOLUTION OF THE SOLE SHAREHOLDER OF THE COMPANY: SECTION 159(2) and 497 OF THE INSOLVENCY ACT 2003 (as amended)**

IT IS NOTED THAT:

1. The directors of the Company Dato Asri bin Hamidin@Hamidon, Datin Rashidah binti Mohd Sies, and Mohd Hisyamuddin bin Awang Abu Bakar (**the Directors**) have recommended that the sole shareholder of the Company, 1 Malaysia Development Berhad (**the Member**), should resolve to place the Company into liquidation pursuant to section 159(2) of the Insolvency Act 2003 (as amended) (**the Act**) as they believe the Company cannot, by reason of its liabilities, continue its business, and it is insolvent.

2. The Member believes the Company to be insolvent.

3. A resolution passed by the Member pursuant to s159(2) shall be a qualifying resolution under s159(3) of the Act as the Company has one shareholder holding 100% of the issued voting shares.

4. The Directors have received consents to act pursuant to section 482(1)(b) of the Act and Rule 325 of the Insolvency Rules 2005 (as amended) from the proposed joint liquidators: Angela Barkhouse, Carl Jackson and Helen Janes (**the Consents**).

5. The Directors have recommended that the Member appoints the said Angela Barkhouse, Carl Jackson and Helen Janes as joint liquidators of the Company.

IT IS RESOLVED IN WRITING BY THE MEMBER THAT:

1. This is a written resolution passed in accordance with s497(1) and s497(3) of the Act.

2. By reason of the Member's belief that the Company is insolvent, **Angela Barkhouse** of Quantuma (Cayman) Limited, Suite N404, Flagship Building, 142 Seafarers Way, George Town, Grand Cayman, Cayman Islands, **Carl Jackson** of Quantuma Advisory Limited, Office D, Beresford House, Town Quay, Southampton, SO14 2AQ, United Kingdom and **Helen Janes** of Hyperion Risk Solutions Limited, Folio Building, Road Town, Tortola, BVI, VG1110 be appointed as joint liquidators of the Company pursuant to section 159(2) of the Act.

3. A copy of the Consents shall be attached to this resolution.

4. This is and is intended to be a qualifying resolution pursuant to section 159(2) of the Insolvency Act 2003.

_____
SOLE SHAREHOLDER / MEMBER
Print Name:

31 December ................. 2021
DATE

For and on behalf of 1 Malaysia Development Berhad
Menara IMC, No. 8, Jalan Sultan Ismail
50250 Kuala Lumpur, Malaysia

1

**BRAZEN SKY LIMITED ("the Company")**
**BVI Co. Number 1723620**

**WRITTEN RESOLUTION OF THE DIRECTORS OF THE COMPANY**

IT IS NOTED THAT:

1.  The directors of the Company Dato Asri bin Hamidin@Hamidon, Datin Rashidah binti Mohd Sies, and Mohd Hisyamuddin bin Awang Abu Bakar (**the Directors**) did recommend that the sole shareholder of the Company, 1 Malaysia Development Berhad (**the Member**), should resolve to place the Company into liquidation pursuant to section 159(2) of the Insolvency Act 2003 (as amended) (**the Act**) as they believe the Company cannot, by reason of its liabilities, continue its business, and it is insolvent.

2.  The Directors received consents to act pursuant to section 482(1)(b) of the Act and Rule 325 of the Insolvency Rules 2005 (as amended) (**the Consents**) from the proposed joint liquidators: Angela Barkhouse, Carl Jackson and Helen Janes.

3.  The Directors did recommend that the Member appoint Angela Barkhouse, Carl Jackson and Helen Janes as joint liquidators (**the Joint Liquidators**) of the Company.

4.  The Member resolved by a qualifying resolution under the Act to appoint the Joint Liquidators under s159(2) of the Act.

5.  The Company must as soon as practicable give the Joint Liquidators notice of their appointment in writing under the Act.

The undersigned, being the Directors of the Company, hereby adopts the following resolutions by consent AND IT IS RESOLVED THAT:

1.  The Member's resolution appointing the Joint Liquidators under s159(2) of the Act is ratified and approved.

2.  A copy of the said Member's resolution shall immediately be sent to the Joint Liquidators at the addresses set out in the Consents.

3.  A copy of the notice of appointment duly signed by the Directors as attached hereto shall be sent to the Joint Liquidators at the addresses set out in the Consents.

_____
Director
Dato Asri bin Hamidin@Hamidon
Dated: 31 December 2021

_____
Director
Datin Rashidah binti Mohd Sies
Dated: 31 December 2021

_____
Director
Mohd Hisyamuddin bin Awang Abu Bakar
Dated: 31 December 2021

1

**BRAZEN SKY LIMITED ("the Company")**
**BVI Co. Number 1723620**

**NOTICE OF LIQUIDATORS' APPOINTMENT**

We, the Directors of the Company, pursuant to Section 161(2) of the Insolvency Act 2003 (as amended) (**the Act**) hereby notify you:

1. **Angela Barkhouse** of Quantuma (Cayman) Limited, Suite N404, Flagship Building, 142 Seafarers Way, George Town, Grand Cayman, Cayman Islands,

2. **Carl Jackson** of Quantuma Advisory Limited, Office D, Beresford House, Town Quay, Southampton, SO14 2AQ, United Kingdom, and,

3. **Helen Janes** of Hyperion Risk Solutions Limited, Folio Building, Road Town, Tortola, BVI, VG1110

That you were appointed as a Joint Liquidator of the Company pursuant to a member's qualifying resolution dated ~~November 2021~~ 31 December 2021 under section 159(2) of the Act.

_____
Director
Dato Asri bin Hamidin@Hamidon
Dated: 31 December 2021

_____
Director
Datin Rashidah binti Mohd Sies
Dated: 31 December 2021

_____
Director
Mohd Hisyamuddin bin Awang Abu Bakar
Dated: 31 December 2021

2

**BRAZEN SKY LIMITED (IN LIQUIDATION)**
**COMPANY REGISTRATION NO: 1723620**
**("THE COMPANY")**

**NOTICE** is hereby given that Angela Barkhouse of Quantuma (Cayman) Limited of Suite N404, Flagship Building, 142 Seafarers Way, George Town, Grand Cayman, Cayman Islands, Carl Jackson of Quantuma Advisory Limited of Office D, Beresford House, Town Quay, Southampton, SO14 2AQ, United Kingdom and Helen Janes of Hyperion Risk Solutions Limited of The Folio Building, Road Town, Tortola, BVI, VG1110 (**"Hyperion"**) were jointly appointed as Liquidators of the Company by qualifying resolution passed at a properly constituted meeting of the Company on 31 December 2021 pursuant to Section 159(2) of the Insolvency Act 2003 (**"the Act"**)

**NOTICE IS HERBY GIVEN** pursuant to Section 179(1) of the Act, that a meeting of creditors of the Company will be held at the offices of Hyperion on Friday, 21 January 2022 at 4pm (Eastern time), for the purposes provided for in Sections 179(3) and (4) of the Act.

Any creditor wishing to attend this meeting must submit a R184 Claim Form and a Proxy Form (if they wish to appoint a proxy to represent them at the meeting) to the offices of Hyperion no later than 12 noon on Thursday, 20 January 2022 (Eastern time).  Claims may be lodged via email to bvi@quantuma.com.  The R184 Claim Form and Proxy Form are available upon request from the offices of Hyperion.

Any creditor wishing to attend this meeting via teleconference can request such details via email to bvi@quantuma.com.

For the purposes of voting, a secured creditor is required (unless he surrenders his security) to lodge at the offices of Hyperion before the meeting a statement giving particulars of his security, the date when it was given and the value at which it is assessed.  The statement may also be lodged via email to bvi@quantuma.com.

**NOTICE IS FURTHER GIVEN** that before the date of the meeting of the creditors, any creditor may request to be provided with a list of names and addresses of the Company's creditors and such information concerning the affairs of the Company as is available, which may be obtained by applying to Quantuma  by telephone on +1 345 746 5260 or by email to bvi@quantuma.com.

Dated this 7th day of January 2022

**Helen Janes**
Joint Liquidator

**Contact Details:**
Quantuma
**T:** +1 345 746 5260
**E:** bvi@quantuma.com

**Case Number :BVIHCOM2022/0077**



FILED
HIGH COURT
TERRITORY OF
THE VIRGIN ISLANDS

**EASTERN CARIBBEAN SUPREME COURT**
**BRITISH VIRGIN ISLANDS**
**IN THE HIGH COURT OF JUSTICE**
**COMMERCIAL DIVISION**

Submitted Date:21/06/2022 09:58

Filed Date:21/06/2022 09:59

**IN THE MATTER OF SECTION 218 OF THE BVI BUSINESS COMPANIES ACT, 2004**
**AND IN THE MATTER OF TANORE FINANCE CORPORATION, AABAR INVESTMENTS**
**PJS LIMITED, 1MDB ENERGY HOLDINGS LIMITED**

Fees Paid:72.99

**AND IN THE MATTER OF AN APPLICATION FOR RESTORATION OF DISSOLVED**
**COMPANIES**

**Claim No. BVIHCOM2022/077**

**1 MALAYSIA DEVELOPMENT BERHAD**

Applicant

**and**

**(1) THE REGISTRAR OF CORPORATE AFFAIRS**
**(2) TANORE FINANCE CORPORATION**
**(3) AABAR INVESTMENTS PJS LIMITED**
**(4) 1MDB ENERGY HOLDINGS LIMITED**

Defendants

---

**Order**

---

BEFORE:     The Honourable Mr Justice Wallbank

DATED:      16 May 2022

ENTERED: 22 June 2022

**UPON THE FIXED DATE CLAIM FORM** filed on behalf of the Claimant for an Order that TANORE FINANCE CORPORATION, AABAR INVESTMENTS PJS LIMITED, and 1MDB ENERGY HOLDINGS LIMITED (together referred to as the Companies) be restored to the Register of Companies pursuant to Section 218 of the Business Companies Act 2004 (the "**BCA**") coming on for first hearing

**AND UPON** reading the affidavit of DATO' SHAMSUL AZRI BIN ABU BAKAR sworn on 9 March 2022

**AND UPON** the Court being satisfied that the First Defendant and the Financial Secretary were served with notice of the application

**AND UPON** Ms Angela Barkhouse, Ms Helen Janes, and Mr Carl Jackson consenting to be appointed Joint Liquidators of the Companies

1

9

**AND UPON** Hatstone Trust Companies (BVI) Limited ("**Hatstone**") confirming that it will act as Registered Agent of the Companies upon restoration

**AND UPON** the Claimant by its Counsel undertaking that the Claimant shall file documentary evidence confirming the standing of DATO'SHAMSUL AZI BIN ABU BAKAR as a director of the Claimant, to be filed within 14 days of the date of this Order

**AND UPON** hearing Mr Gerard Clarke and Mr Andrew Emery of Counsel for the Claimant and Mr Stephen Grayson of Counsel for the Registrar of Corporate Affairs

**IT IS ORDERED THAT:**

1.   The dissolution of the Companies be and is hereby avoided.

2.   Upon payment of all outstanding fees and penalties due and payable to the Registrar of Corporate Affairs (the "**Registrar**") in respect of each of the Companies, the Registrar be directed to restore the name of the Companies to the Register of Companies (the "**Register**") and issue a certificate of restoration.  The restoration shall have effect from the date and time a copy of the sealed Court Order is filed with the Registrar.

3.   Upon the name of the Companies being restored to the Register, each company shall be deemed, pursuant to section 218B(6) of the BCA to have continued in existence and not been dissolved or struck off the Register.

4.   Each of the Companies shall be restored into voluntary liquidation and Ms Angela Barkshouse of Quantuma (Cayman) Limited of Suite N404, Flagship Building, 149 Seafarers Way, George Town, Grand Cayman, Cayman Islands, Carl Jackson of Quantuma Advisory Limited of Office D, Beresford House, Town Quay, Southampton, SO14 2AQ, United Kingdom, and Ms Helen Janes of Hyperion Risk Solutions Limited of The Folio Building, Road Town, Tortola, BVI, VG 1110 shall be appointed as Joint Liquidators.

5.   Any action to be taken by the Joint Liquidators may be taken by a majority of two of three Joint Liquidators.

6.   It appearing to the Court on the evidence before it that each of the Companies is insolvent, and that the Claimant is a creditor of each of the Companies, the voluntary liquidation of the Company shall immediately upon restoration continue as insolvent liquidation under the Insolvency Act 2003 ("**IA**"). The Joint Liquidators shall be appointed as such by the Court under sections 159 and 162 of the IA and shall have all the duties and powers conferred upon Court appointed liquidators by sections 185 and 186 of and Schedule 2 to the IA. The Joint Liquidators shall notify the Official Receiver of the Companies' insolvency and of such appointment.

7.   The Court dispenses with the requirement for the Claimant's application for an order appointing liquidators under the IA to be advertised, pursuant to section 165 of the IA.

8.    Any property which belonged to any each Company and which was vested in the Crown upon dissolution and which was not disposed of, shall be restored to and vests in each Company.

9.    The Registrar shall be served with a sealed copy of this Order.

10.   The Financial Secretary shall be served with a sealed copy of this Order.

11.   This Order having been made without notice to the Companies, any person who was a lawfully appointed director of any one of the Companies on the date of its dissolution may make an application to the Court upon no less than 14 days written notice to the Claimant and the Joint Liquidators for this Order to be discharged or varied in respect of the Company of which such person was a director, upon such director showing good cause for this Order to be discharged or varied PROVIDED that any such application must be made in writing and supported by an affidavit of such director no later than 14 days after the service of this Order upon the Company in question.

12.   The Court's file on this matter shall remain sealed until 14 days after the date of service of this Order on each of the Companies. The claimant shall notify the Court office of the date of such service and the Claimant and the Joint Liquidators shall have liberty to apply for the period of sealing to be extended, and generally.

13.   The Claimant shall pay the Registrar her costs of the proceedings in the sum of $1,500.00.
      .

**BY THE COURT**



Dep. **REGISTRAR**

3

**EASTERN CARIBEEAN SUPREME COURT**
**IN THE HIGH COURT OF JUSTICE**
**BRITISH VIRGIN ISLANDS**
**BVI11C0M2022/077**
**IN THE MATTER OF SECTION 218 OF THE**
**BRITISH VIRGIN ISLANDS BUSINESS**
**COMPANIES ACT, 2004**

**AND IN THE MATTER OF TANORE FINANCE**
**CORPORATION, AABAR INVESTMENTS PJS**
**LIMITED, AND 1MDB ENERGY HOLDINGS**
**LIMITED**

**AND IN THE MATTER OF AN APPLICATION**
**FOR THE RESTORATION OF DISSOLVED**
**COMPANIES**

**BETWEEN:**

**1 MALAYSIA DEVELOPMENT BERHAD**

**Claimant**

**AND**

**(1)  THE REGISTRAR OF CORPORATE**
**AFFAIRS**
**(2)  AABAR INVESTMENTS PJS LIMITED**
**(3)  TANORE FINANCE CORPORATION**
**(4)  1MDB ENERGY HOLDINGS LIMITED**

**Defendant**

---

**Order**

---



Helm House, Fish Bay,

Tortola, British Virgin Islands

1 284 541 8809

**Legal Practitioners for the Applicant**

4

Case Number :BVIHCOM2022/0076



FILED
HIGH COURT
TERRITORY OF
THE VIRGIN ISLANDS

EASTERN CARIBBEAN SUPREME COURT
BRITISH VIRGIN ISLANDS
IN THE HIGH COURT OF JUSTICE
COMMERCIAL DIVISION

Submitted Date:21/06/2022 10:02

Filed Date:21/06/2022 10:03

IN THE MATTER OF SECTION 218 OF THE BVI BUSINESS COMPANIES ACT, 2004
AND IN THE MATTER OF BLACKSTONE ASIA REAL ESTATE PARTNERS LIMITED
AND IN THE MATTER OF AN APPLICATION FOR THE RESTORATION OF A DISSOLVED
COMPANY

Fees Paid:72.59

Claim No. BVIHCOM 2022/076

1 MALAYSIA DEVELOPMENT BERHAD

Claimant

And

THE REGISTRAR OF CORPORATE AFFAIRS

Defendants

---

**Order**

---

BEFORE:      The Honourable Mr Justice Wallbank

DATED:       16 May 2022

ENTERED: 22 June 2022

**UPON THE FIXED DATE CLAIM FORM** filed on behalf of the Claimant for an Order that Blackstone Asia Real Estate Partners Limited (the Company) be restored to the Register of Companies pursuant to Section 218 of the Business Companies Act 2004 (the **"BCA"**) coming on for first hearing

**AND UPON** reading the affidavit of DATO' SHAMSUL AZRI BIN ABU BAKAR sworn on 9 March 2022

**AND UPON** the Court being satisfied that the Financial Secretary was served with notice of the application

**AND UPON** Ms Angela Barkhouse, Ms Helen Janes, and Mr Carl Jackson consenting to be appointed Joint Liquidators of the Company

**AND UPON** Hatstone Trust Company (BVI) Limited ("**Hatstone**") confirming that it will act as Registered Agent of the Company upon restoration

1

20

**AND UPON** the Claimant by its Counsel undertaking that the Claimant shall file documentary evidence confirming the standing of DATO' SHAMSUL AZRI BIN ABU BAKAR as a director of the Claimant, to be filed within the 14 days of the date of this Order

**AND UPON** hearing  Mr Gerard Clarke and Mr Andrew Emery, Counsel for the Claimant and Mr Stephen Grayson of Counsel for the Registrar of Corporate Affairs

**IT IS ORDERED THAT:**

1.   The dissolution of the Company be and is hereby avoided.

2.   Upon payment of all outstanding fees and penalties due and payable to the Registrar of Corporate Affairs (the **"Registrar"**), the Registrar be directed to restore the name of the Company to the Register of Companies (the **"Register"**) and issue a certificate of restoration.  The restoration shall have effect from the date and time a copy of the sealed Court Order is filed with the Registrar.

3.   Upon the name of the Company being restored to the Register, the Company shall be deemed, pursuant to section 218B(6) of the BCA to have continued in existence and   not been dissolved or struck off the Register.

4.   The Company shall be restored into insolvent liquidation and Ms Angela Barkshouse of Quantuma (Cayman) Limited of Suite N404, Flagship Building, 142 Seafarers Way, George Town, Grand Cayman, Cayman Islands, Carl Jackson of Quantuma Advisory Limited of Office D, Beresford House, Town Quay, Southampton, SO14 2AQ, United Kingdom, and Ms Helen Janes of Hyperion Risk Solutions Limited of The Folio Building, Road Town, Tortola, BVI, VG 1110 shall be appointed as Joint Liquidators.

5.   Any action to be taken by the Joint Liquidators may be taken by a majority of two of the three Joint Liquidators.

6.   It appearing to the Court on the evidence before it that the Company is insolvent, and that the Claimant is a creditor of the Company, the voluntary liquidation of the Company shall immediately upon restoration continue as an insolvent liquidation under the Insolvency Act 2002 ("**IA**"). The Joint Liquidators shall be appointed as such by the Court under sections 159 and 162 of the IA and shall have all the duties and powers conferred upon Court-appointed liquidators by sections 185 and 186 of and Schedule 2 to the IA. The Joint Liquidators shall notify the Official Receiver of the Company's insolvency and of such appointment.

7.   The court dispenses with the requirement for the Claimant's application for an order appointing liquidators under the IA to be advertised, pursuant to section 165 of the IA.

8.   Any property which belonged to the Company and which was vested in the Crown upon dissolution and which was not disposed of, shall be restored to and vests in the Company.

9.   The Registrar shall be served with a sealed copy of this Order.

2

10.   The Financial Secretary shall be served with a sealed copy of this Order.

11.   This order having been made without notice to the Company, any person who was lawfully appointed director of the Company on the date of its dissolution may make an application to the Court upon no less than 14 days written notice to the Claimant and to the Joint Liquidators for this Order to be discharged or varied PROVIDED that any such application must be made in writing and supported by an affidavit of such director no later than 14 days after the service of this Order upon the Company.

12.   The Court's file on this matter shall remain sealed until 14 days after the date of service of this Order on the Company. The Claimant shall notify the Court office of the date of such service and the Claimant and the Joint Liquidators shall have liberty to apply for the period of sealing to be extended, and generally.

13.   The Claimant shall pay the Registrar her costs of the proceedings in the sum of $1,500.00.

**BY THE COURT**



**Dep. REGISTRAR**

3

**THE EASTERN CARIBBEAN SUPREME COURT**
**IN THE HIGH COURT OF JUSTICE**
**BRITISH VIRGIN ISLANDS**
**BVIHCV 2020/076**
**IN THE MATTER OF SECTION 218 OF THE**
**BRITISH VIRGIN ISLANDS BUSINESS**
**COMPANIES ACT, 2004**

**AND IN THE MATTER OF BLACKSTONE ASIA**
**REAL ESTATE PARTNERS LIMITED**

**AND IN THE MATTER OF AN APPLICATION**
**FOR THE RESTORATION OF A DISSOLVED**
**COMPANY**

**BETWEEN:**

**1 MALAYSIA DEVELOPMENT BERHAD**

**Claimant**

**AND**

**THE REGISTRAR OF CORPORATE AFFAIRS**

**Defendant**

---

**Order**

---

Emery Cooke

Helm House, Fish Bay,

Tortola, British Virgin Islands

1 284 541 8809

**Legal Practitioners for the Applicant**

4

Case Number :BVIHCOM2022/0074



**THE EASTERN CARIBBEAN SUPREME COURT**
**BRITISH VIRGIN ISLANDS**
**IN THE HIGH COURT OF JUSTICE**
**COMMERCIAL DIVISION**

Submitted Date:15/07/2022 11:16

Filed Date:15/07/2022 11:16

IN THE MATTER OF SECTION 162 OF THE BVI INSOLVENCY ACT 2003 Fees Paid:72.59

Claim No. BVIHCOM2022/074

BETWEEN

**1 MALAYSIA DEVELOPMENT BERHAD**

Claimant

and

**VASCO INVESTMENT SERVICES SA**

Defendant

_____

**Order**

_____

BEFORE:  The Honourable Mr Justice Wallbank

DATED:  5 July 2022

ENTERED:  **19 July** 2022

**UPON** hearing Mr Gerard Clarke, Mr Andrew Emery and Miss Gurprit Mattu of Counsel for the Claimant

**AND UPON** reading the affidavit of DATO' SHAMSUL AZRI BIN ABU BAKAR dated 9 March 2022

**AND UPON** the Court being satisfied that the Defendant was served with notice of the application

**AN UPON** Ms Angela Barkhouse, Ms Helen Janes, and Mr Carl Jackson consenting to be appointed Joint Liquidators of the Defendant (the **Company**).

1

**IT IS ORDERED THAT**:

1. Helen Janes of Hyperion Risk Solutions Limited of The Folio Building, Road Town, Tortola, BVI, VG 1110, Angela Barkhouse of Quantuma (Cayman) Limited of Suite N404, Flagship Building, 142 Seafarers Way, George Town, Grand Cayman, Cayman Islands, and Carl Jackson of Quantuma Advisory Limited of Office D, Beresford House, Town Quay, Southampton, SO14 2AQ, United Kingdom shall be appointed as Joint Liquidators of the Company.

2. All functions and powers of the Joint Liquidators may be exercised jointly by any two of them.

3. The Joint Liquidators are hereby appointed by the Court under sections 159(1) and 162(1) of the British Virgin Islands Insolvency Act 2003 (the Act). The powers set out in paragraphs 1 to 4 of Schedule 2 to the Act (as set out in the Annex hereto) are to be exercised only with the sanction of the Court.

4. All other powers set out in Schedule 2 to the Act (as set out in the Annex hereto) are exercisable without the sanction of the Court.

5. The costs and the expenses of the liquidation including the remuneration, expenses and disbursements of the Joint Liquidators shall be paid from the assets of the Company as an expense of the liquidation in accordance with the order of priority prescribed by Rule 199 of the Insolvency Rules 2005.

6. The determination of the following issues (the **RoD Issues**) is adjourned to a further hearing at 1030 AM on 18 July 2022, time estimate one hour. The Claimant shall notify the Registrar of Corporate Affairs of that hearing, and the Registrar may make written and oral submissions. Any written submissions on the RoD Issues should be filed by 2pm on 15 July 2022.

7. The RoD Issues are as follows –

    (a) May the Court dispense with the requirement to file a Register of Directors under section

2

217(1)(b) of the Business Companies Act 2004 (the **BCA**)?

(b)    If so, should the Court do so in the present case and in other cases arising from the same factual background as this case (namely the fraud committed against the State and people of Malaysia generally referred to as the 1MDB Fraud)?

(c)    With regard to the Company and to other BVI companies that are or shall hereafter be placed into liquidation for the purposes of investigating and/or seeking remedies arising from the 1MDB Fraud, should the Registrar exercise her discretion under section 213(1)(a)(ii) of the BCA not to strike from the register a company that is unable to file a Register of Directors?

8.    The costs of the application for this Order and the Order dated 16 May 2022 shall be costs in the liquidation.

**BY THE COURT**



~~BY THE~~ REGISTRAR *Dap.*

3

28

**ANNEX**

**Schedule 2 of Insolvency Act 2003**
**POWERS OF LIQUIDATORS**
**(Section 186)**

1. Power to pay and class of creditors in full.
2. Power to make a compromise or arrangement with creditors or persons claiming to be creditors, or having or alleging that they have any claim against the company, whether present or future, certain or contingent, ascertained or not.
3. Power to compromise, on such terms as maybe agreed
   a. Calls and liabilities to calls, debts and liabilities capable of resulting in debts, and claims, whether present or future, certain or contingent, ascertained or not, subsisting or supposed to subsist between the company and any person; and
   b. Questions in any way relating to or affecting the assets or the liquidation of the company; and take security for the discharge of any such call, debt, liability or claim and give a complete discharge in respect of it.
4. Power to commence, continue or defend any action or other legal proceedings in the name and on behalf of the company.
5. Power to carry on the business of the company so far as may be necessary for its beneficial liquidation.
6. Power to sell or otherwise dispose of property of the company.
7. Power to do all acts and execute, in the name and on behalf of the company, any deeds, receipts or other document.
8. Power to use the company's seal.
9. Power to prove, rank and claim in the bankruptcy, liquidation, insolvency or sequestration of any member or past member for any balance against his estate, and to receive dividends, in the bankruptcy, liquidation, insolvency, sequestration or in respect of that balance, as a separate debt due from the bankruptcy or insolvent, and ratably with the other separate creditors.
10. Power to draw, accept, make and endorse any bill of exchange or promissory note in the name and on behalf of the company with the same effect with respect to the company's liability as if the bill or note had been drawn, accepted, made or indorsed by or on behalf of the company in the course of its business.
11. Power to borrow money, whether on the security of the assets of the company or otherwise.
12. Power to take out in his official name letters of administration to any deceased member or past member or debtor, and to do any other act necessary for obtaining payment of any money due from a member or past member or debtor, or his estate, that cannot conveniently be done in the name of the company.
    For the purpose of enabling the liquidator to take out letters of administration or do any other act under this paragraph, to be due to the liquidator himself.
13. Power to call meetings of creditors or members for
    a. the purpose of informing creditors or members concerning the progress of or matters arising in the liquidation;
    b. the purpose of ascertaining the views of creditors or members on any matter arising in the liquidation; or
    c. such other purpose connected with the liquidation as the liquidator considers fit.
14. Power to appoint a solicitor, accountant or other professionally qualified person to assist him in the performance of his duties.
15. Power to appoint an agent to do any business that the liquidator is unable to do himself, or which can be more conveniently done by an agent.

4

**THE EASTERN CARIBBEAN SUPREME COURT**
**BRITISH VIRGIN ISLANDS**
**IN THE HIGH COURT OF JUSTICE**
**COMMERCIAL DIVISION**

**IN THE MATTER OF SECTION 162 OF THE BVI**
**INSOLVENCY ACT 2003**

**Claim No. BVIHCOM2022/074**

**BETWEEN**

**1 MALAYSIA DEVELOPMENT BERHAD**

**Claimant**

**and**

**VASCO INVESTMENT SERVICES SA**

**Defendant**

---

**Order**

---

**E M E R Y**
**C O O K E**

Helm House, Fish Bay,
Tortola, British Virgin Islands
1 284 541 8809
**Legal Practitioners for the Claimant**

5

Case Number :BVIHCOM2022/0075



**FILED**
HIGH COURT
**TERRITORY OF**
**THE VIRGIN ISLANDS**

**THE EASTERN CARIBBEAN SUPREME COURT**
**BRITISH VIRGIN ISLANDS**
**IN THE HIGH COURT OF JUSTICE**
**COMMERCIAL DIVISION**

**Submitted Date:15/07/2022 11:19**

**Filed Date:15/07/2022 11:19**

**IN THE MATTER OF SELUNE LIMITED**

**Fees Paid:72.59**

**Claim No. BVIHCOM2022/075**

**BETWEEN**

### 1 MALAYSIA DEVELOPMENT BERHAD

**Claimant**

**and**

### SELUNE LIMITED

**Defendant**

_____

**Order**

_____

BEFORE:  The Honourable Mr Justice Wallbank

DATED:  5 July 2022

ENTERED: **19 July** 2022

**UPON** hearing Mr Gerard Clarke, Mr Andrew Emery and Miss Gurprit Mattu of Counsel for the Claimant

**AND UPON** reading the affidavit of DATO' SHAMSUL AZRI BIN ABU BAKAR dated 9 March 2022 and the affidavit of ANGELA BARKHOUSE dated 14 June 2022

**AND UPON** the Court being satisfied that the Defendant was served with notice of the application

**AND UPON** reading an email from Mr David O'Connor, Voluntary Liquidator of the Defendant, to Emery Cooke, Legal Practitioners for the Claimant, dated 2 July 2022

**AND UPON** Ms Angela Barkhouse, Ms Helen Janes, and Mr Carl Jackson consenting to be

1

33

appointed Liquidators of the Defendant (the "**Company**")

**IT IS ORDERED THAT:**

1.    Mr David O'Connor shall be removed as Voluntary Liquidator of the Company under section 205C(2)(b)(iii) of the British Virgin Islands Companies Act 2004 and shall be replaced by Helen Janes of Hyperion Risk Solutions Limited of The Folio Building, Road Town, Tortola, BVI, VG 1110, Angela Barkhouse of Quantuma (Cayman) Limited of Suite N404, Flagship Building, 149 Seafarers Way, George Town, Grand Cayman, Cayman Islands, and Carl Jackson of Quantuma Advisory Limited of Office D, Beresford House, Town Quay, Southampton, SO14 2AQ, United Kingdom who shall be appointed as the Liquidators of the Company.

2.    It appearing to the Court that the company is insolvent, and that the Claimant is a creditor of the Company, the Liquidators shall be appointed by the Court as liquidators under sections 159 (1) and 162 (1) of the Insolvency Act 2003 and shall have all the duties and powers conferred upon Court-appointed Liquidators by sections 185 and 186 of and Schedule 2 to that Act (as set out in the Annex hereto). The Court dispenses with the requirement for advertisement in respect of the appointment of the Liquidators, on the grounds that it is in the interests of justice so to do.

3.    The powers set out in paragraphs 1 to 4 of Schedule 2 to the Act shall be exercisable only with the sanction of the Court. All other powers shall be exercisable without the sanction of the Court.

4.    All powers of the Liquidators shall be exercisable by any two of the three Liquidators.

5.    The Liquidators shall notify the Official Receiver of the Company's insolvency and of their appointment.

6.    The costs and the expenses of the liquidation including the remuneration, expenses and disbursements of the Joint Liquidators shall be paid from the assets of the Company as an expense of the liquidation in accordance with the order of priority prescribed by Rule 199 of the Insolvency Rules 2005.

7.    The determination of the following issues (the **RoD Issues**) is adjourned to a further hearing at

2

1030 AM on 18 July 2022, time estimate one hour.  The Claimant shall notify the Registrar of Corporate Affairs of that hearing, and the Registrar may make written and oral submissions. Any written submissions on the RoD Issues should be filed by 2pm on 15 July 2022.

8.    The RoD Issues are as follows –

    (a)    May the Court dispense with the requirement to file a Register of Directors under section 217(1)(b) of the Business Companies Act 2004 (the **BCA**)?

    (b)    If so, should the Court do so in the present case and in other cases arising from the same factual background as this case (namely the fraud committed against the State and people of Malaysia generally referred to as the 1MDB Fraud)?

    (c)    With regard to the Company and to other BVI companies that are or shall hereafter be placed into liquidation for the purposes of investigating and/or seeking remedies arising from the 1MDB Fraud, should the Registrar exercise her discretion under section 213(1)(a)(ii) of the BCA not to strike from the register a company that is unable to file a Register of Directors?

9.    The costs of the application for this Order and the Order of 16 May 2022 shall be costs in the liquidation.



BY THE COURT

BY THE REGISTRAR

3

**ANNEX**

Schedule 2 to the Insolvency Act 2003
**POWERS OF LIQUIDATORS**
**(Section 186)**

1. Power to pay and class of creditors in full.
2. Power to make a compromise or arrangement with creditors or persons claiming to be creditors, or having or alleging that they have any claim against the company, whether present or future, certain or contingent, ascertained or not.
3. Power to compromise, on such terms as maybe agreed
   a. Calls and liabilities to calls, debts and liabilities capable of resulting in debts, and claims, whether present or future, certain or contingent, ascertained or not, subsisting or supposed to subsist between the company and any person; and
   b. Questions in any way relating to or affecting the assets or the liquidation of the company; and take security for the discharge of any such call, debt, liability or claim and give a complete discharge in respect of it.
4. Power to commence, continue or defend any action or other legal proceedings in the name and on behalf of the company.
5. Power to carry on the business of the company so far as may be necessary for its beneficial liquidation.
6. Power to sell or otherwise dispose of property of the company.
7. Power to do all acts and execute, in the name and on behalf of the company, any deeds, receipts or other document.
8. Power to use the company's seal.
9. Power to prove, rank and claim in the bankruptcy, liquidation, insolvency or sequestration of any member or past member for any balance against his estate, and to receive dividends, in the bankruptcy, liquidation, insolvency, sequestration or in respect of that balance, as a separate debt due from the bankruptcy or insolvent, and ratably with the other separate creditors.
10. Power to draw, accept, make and endorse any bill of exchange or promissory note in the name and on behalf of the company with the same effect with respect to the company's liability as if the bill or note had been drawn, accepted, made or indorsed by or on behalf of the company in the course of its business.
11. Power to borrow money, whether on the security of the assets of the company or otherwise.
12. Power to take out in his official name letters of administration to any deceased member or past member or debtor, and to do any other act necessary for obtaining payment of any money due from a member or past member or debtor, or his estate, that cannot conveniently be done in the name of the company.
    For the purpose of enabling the liquidator to take out letters of administration or do any other act under this paragraph, to be due to the liquidator himself.
13. Power to call meetings of creditors or members for
    a. the purpose of informing creditors or members concerning the progress of or matters arising in the liquidation;
    b. the purpose of ascertaining the views of creditors or members on any matter arising in the liquidation; or
    c. such other purpose connected with the liquidation as the liquidator considers fit.
14. Power to appoint a solicitor, accountant or other professionally qualified person to assist him in the performance of his duties.
15. Power to appoint an agent to do any business that the liquidator is unable to do himself, or which can be more conveniently done by an agent.

4

THE EASTERN CARIBBEAN SUPREME COURT
BRITISH VIRGIN ISLANDS
IN THE HIGH COURT OF JUSTICE
COMMERCIAL DIVISION

IN THE MATTER OF SELUNE LIMITED

Claim No. BVIHCOM2022/075

BETWEEN

**1 MALAYSIA DEVELOPMENT BERHAD**

**Claimant**

and

**SELUNE LIMITED**

**Defendant**

---

**Order**

---

**E M E R Y
C O O K E**

Helm House, Fish Bay,
Tortola, British Virgin Islands
1 284 541 8809
**Legal Practitioners for the Claimant**

5

Case Number :BVIHCOM2022/0073



FILED
HIGH COURT
TERRITORY OF
THE VIRGIN ISLANDS

**THE EASTERN CARIBBEAN SUPREME COURT**
**BRITISH VIRGIN ISLANDS**
**IN THE HIGH COURT OF JUSTICE**
**COMMERCIAL DIVISION**

Submitted Date:15/07/2022 11:11

Filed Date:15/07/2022 11:11

**IN THE MATTER OF SECTION 162 OF THE BVI INSOLVENCY ACT 2003** Fees Paid:72.59

Claim No. BVIHCOM2022/073

**BETWEEN**

**SRC INTERNATIONAL (MALAYSIA) LIMITED (IN LIQUIDATION)**

**Claimant**

and

**PACIFIC RIM GLOBAL GROWTH LIMITED**

**Defendant**

_____

**Order**

_____

BEFORE:  The Honourable Mr Justice Wallbank

DATED:   5 July 2022

ENTERED: 19 July 2022

**UPON** hearing Mr Gerard Clarke, Mr Andrew Emery, and Miss Gurprit Mattu of Counsel for the Claimant

**AND UPON** reading the affidavit of Angela Barkhouse dated 23 March 2022

**AND UPON** the Court being satisfied that the Defendant was served with notice of the application

**AND UPON** Ms Angela Barkhouse, Ms Helen Janes, and Mr Carl Jackson consenting to be appointed Joint Liquidators of the Defendant (the **Company**)

1

40

**IT IS ORDERED THAT**:

1. Helen Janes of Hyperion Risk Solutions Limited of The Folio Building, Road Town, Tortola, BVI, VG 1110, Angela Barkhouse of Quantuma (Cayman) Limited of Suite N404, Flagship Building, 142 Seafarers Way, George Town, Grand Cayman, Cayman Islands, and Carl Jackson of Quantuma Advisory Limited of Office D, Beresford House, Town Quay, Southampton, SO14 2AQ, United Kingdom shall be appointed as Joint Liquidators of the Company.

2. All functions and powers of the Joint Liquidators may be exercised jointly by any two of them.

3. The Joint Liquidators are hereby appointed by the Court under sections 159(1) and 162(1) of the British Virgin Islands Insolvency Act 2003 (the Act). The powers set out in paragraphs 1 to 4 of Schedule 2 to the Act (as set out in the Annex hereto) are to be exercised only with the sanction of the Court.

4. All other powers set out in Schedule 2 to the Act (as set out in the Annex hereto) are exercisable without the sanction of the Court.

5. The costs and the expenses of the liquidation including the remuneration, expenses and disbursements of the Joint Liquidators shall be paid from the assets of the Company as an expense of the liquidation in accordance with the order of priority prescribed by Rule 199 of the Insolvency Rules 2005.

6. The determination of the following issues (the **RoD Issues**) is adjourned to a further hearing at 1030 AM on 18 July 2022, time estimate one hour. The Claimant shall notify the Registrar of Corporate Affairs of that hearing, and the Registrar may make written and oral submissions. Any written submissions on the RoD Issues should be filed by 2pm on 15 July 2022.

7. The RoD Issues are as follows –

    (a) May the Court dispense with the requirement to file a Register of Directors under section 217(1)(b) of the Business Companies Act 2004 (the **BCA**)?

    (b) If so, should the Court do so in the present case and in other cases arising from the same

2

factual background as this case (namely the fraud committed against the State and people of Malaysia generally referred to as the 1MDB Fraud)?

(c)    With regard to the Company and to other BVI companies that are or shall hereafter be placed into liquidation for the purposes of investigating and/or seeking remedies arising from the 1MDB Fraud, should the Registrar exercise her discretion under section 213(1)(a)(ii) of the BCA not to strike from the register a company that is unable to file a Register of Directors?

8.    The costs of the application for this Order and the Order dated 16 May 2022 shall be costs in the liquidation.

BY THE COURT

BY THE REGISTRAR



3

42

ANNEX

**Schedule 2 Insolvency Act 2003**
**POWERS OF LIQUIDATORS**
**(Section 186)**

1. Power to pay and class of creditors in full.
2. Power to make a compromise or arrangement with creditors or persons claiming to be creditors, or having or alleging that they have any claim against the company, whether present or future, certain or contingent, ascertained or not.
3. Power to compromise, on such terms as maybe agreed
   a. Calls and liabilities to calls, debts and liabilities capable of resulting in debts, and claims, whether present or future, certain or contingent, ascertained or not, subsisting or supposed to subsist between the company and any person; and
   b. Questions in any way relating to or affecting the assets or the liquidation of the company; and take security for the discharge of any such call, debt, liability or claim and give a complete discharge in respect of it.
4. Power to commence, continue or defend any action or other legal proceedings in the name and on behalf of the company.
5. Power to carry on the business of the company so far as may be necessary for its beneficial liquidation.
6. Power to sell or otherwise dispose of property of the company.
7. Power to do all acts and execute, in the name and on behalf of the company, any deeds, receipts or other document.
8. Power to use the company's seal.
9. Power to prove, rank and claim in the bankruptcy, liquidation, insolvency or sequestration of any member or past member for any balance against his estate, and to receive dividends, in the bankruptcy, liquidation, insolvency, sequestration or in respect of that balance, as a separate debt due from the bankruptcy or insolvent, and ratably with the other separate creditors.
10. Power to draw, accept, make and endorse any bill of exchange or promissory note in the name and on behalf of the company with the same effect with respect to the company's liability as if the bill or note had been drawn, accepted, made or indorsed by or on behalf of the company in the course of its business.
11. Power to borrow money, whether on the security of the assets of the company or otherwise.
12. Power to take out in his official name letters of administration to any deceased member or past member or debtor, and to do any other act necessary for obtaining payment of any money due from a member or past member or debtor, or his estate, that cannot conveniently be done in the name of the company.
    For the purpose of enabling the liquidator to take out letters of administration or do any other act under this paragraph, to be due to the liquidator himself.
13. Power to call meetings of creditors or members for
    a. the purpose of informing creditors or members concerning the progress of or matters arising in the liquidation;
    b. the purpose of ascertaining the views of creditors or members on any matter arising in the liquidation; or
    c. such other purpose connected with the liquidation as the liquidator considers fit.
14. Power to appoint a solicitor, accountant or other professionally qualified person to assist him in the performance of his duties.
15. Power to appoint an agent to do any business that the liquidator is unable to do himself, or which can be more conveniently done by an agent.

4

THE EASTERN CARIBBEAN SUPREME COURT
BRITISH VIRGIN ISLANDS
IN THE HIGH COURT OF JUSTICE
COMMERCIAL DIVISION

IN THE MATTER OF SECTION 162 OF THE BVI
INSOLVENCY ACT 2003

Claim No. BVIHCOM2022/073

BETWEEN

SRC INTERNATIONAL (MALAYSIA) LIMITED (IN
LIQUIDATION)

**Claimant**

and

PACIFIC RIM GLOBAL GROWTH LIMITED

**Defendant**

---

**Order**

---

**E M E R Y**
**C O O K E**

Helm House, Fish Bay,
Tortola, British Virgin Islands
1 284 541 8809
**Legal Practitioners for the Claimant**

5

Case Number :BVIHCOM2021/0166



FILED
HIGH COURT
TERRITORY OF
THE VIRGIN ISLANDS

EASTERN CARIBBEAN SUPREME COURT
BRITISH VIRGIN ISLANDS
IN THE HIGH COURT OF JUSTICE
COMMERCIAL DIVISION

**Submitted Date:26/10/2021 17:43**

**Filed Date:27/10/2021 08:30**

IN THE MATTER OF SECTION 218 OF THE BVI BUSINESS COMPANIES ACT, 2004
AND IN THE MATTER OF MURASET LIMITED AND AFFINITY EQUITY**Fees Paid:72.59**
INTERNATIONAL PARTNERS LIMITED
AND IN THE MATTER OF AN APPLICATION FOR THE RESTORATION OF
DISSOLVED  COMPANIES

Claim No.

### SRC INTERNATIONAL (MALAYSIA) LTD

Claimant

and

### REGISTRAR OF CORPORATE AFFAIRS

Defendant

---

Order

---

**BEFORE:**     The Honourable Justice Gerhard Wallbank (Ag)

**DATED:**      25th October 2021

**ENTERED** 28 October  2021

**UPON THE FIXED DATE CLAIM FORM** filed on behalf of the Claimant for an Order that Muraset Limited and Affinity Equity International Partners Limited (the "**Companies**") be restored to the Register of Companies pursuant to Section 218 of the BVI Business Companies Act 2004 (the "**Act**") coming on for first hearing

**AND UPON READING** the affidavit of Amiruddin Bin Muhamed sworn on 8 September 2021

**AND UPON READING** the two Witness Statements of Andrew Emery signed on 20 October 2021

**AND UPON** the Liquidator of SRC International (Malaysia) Ltd (In Liquidation) consenting to the application

**AND UPON** the Court being satisfied that the Financial Secretary was served with notice of the application

**AND UPON** Ms Angela Barkhouse and Ms Helen Janes consenting to be appointed Joint Liquidators of the Companies

47

**AND UPON**  Hatstone Trust Company (BVI) Limited (**"Hatstone"**) confirming that it will act as Registered Agent of the Companies upon restoration

**AND UPON HEARING**  Gerard Clarke and Andrew Emery, Counsel for the Claimant and Dian D. Fahie, Counsel for the Registrar of Corporate Affairs:

### IT IS ORDERED THAT:

1.    The dissolution of the Companies be and is hereby avoided.

2.    Upon payment of all outstanding fees and penalties due and payable to the Registrar of Corporate Affairs (the "**Registrar**"), the Registrar be directed to restore the name of the Companies to the Register of Companies (the "**Register**") and issue a certificate of restoration. The restoration has effect from the date and time a copy of the sealed Court Order is filed with the Registrar.

3.    Upon the names of the Companies being restored to the Register, the Companies are deemed, pursuant to section 218B(6) of the Act as if they had continued in existence as if they had not been dissolved or struck off the Register.

4.    Affinity Equity International Partners Limited shall be restored into voluntary liquidation under the supervision of Ms Angela Barkhouse and Ms Helen Janes as Joint Liquidators.

5.    Any property which belonged to the Companies and which was vested in the Crown upon dissolution and which was not disposed of, be restored to and vests in the Companies.

6.    The Registrar be served with a sealed copy of this Order.

7.    The Financial Secretary be served with a sealed copy of this Order

8.    The Claimant shall pay the Registrar costs of the proceedings in the sum of $1,500.00.

9.    Helen Janes of Hyperion Risk Solutions Limited of The Folio Building, Road Town, Tortola, BVI, VG 1110, and Angela Barkhouse of Quantuma (Cayman) Limited of Suite N404, Flagship Building, 149 Seafarers Way, George Town, Grand Cayman, Cayman Islands, and Carl Jackson of Quantuma Advisory Limited of Office D, Beresford House, Town Quay, Southampton, SO14 2AQ, United Kingdom are appointed joint provisional liquidators (the JPLs) of Muraset Limited (the Company).

10.    The JPLs shall not be required to give security for their appointment.

11.    The JPLs are hereby authorised to take such steps as may be necessary or expedient for the protection and preservation of the value of the Company's assets, rights or property of every description (including all choses in action and any right to make capital calls) (the Company

2

**48**

Assets) whether the Company Assets are held by the Company or any other person. For that purpose the JPLs may exercise the following powers without further sanction of the Court:

(a)  to continue, intervene in or defend any action or other legal proceeding in the name and on behalf of the Company;

(b)  to deal with and manage the Company Assets including investments and any other business of the Company;

(c)  to engage staff to assist them in the performance of their functions;

(d)  to engage legal practitioners, attorneys, and other professionally qualified persons to assist them in the performance of their functions;

(e)  to do all acts and execute, in the name and on behalf of the Company, all deeds, receipts and other documents;

(f)  to do all other things incidental to the exercise of their powers.

12. Without prejudice to their powers and functions set out in paragraph 3 above, the JPLs' powers shall further extend to the following in so far as may be necessary or expedient for the protection and preservation of the value of the Company Assets:

(g)  to locate, protect, take possession of, preserve and receive all of the Company Assets, provided that the JPLs shall not distribute, dispose of or part with any of the Company Assets until further order except pursuant to the powers hereby conferred;

(h)  to locate, protect, secure, and take possession of, the books, papers and records of the Company including all accounting and statutory records and all bank records;

(i)  to enter upon or take possession of any premises of the Company;

(j)  to take control of and exercise all rights which the Company may have in relation to any subsidiaries, joint ventures, investments, associated companies, businesses or other entities in which the Company holds shares or any other interest (collectively Subsidiaries), or the shares in such Subsidiaries as are owned (directly or indirectly) by the Company, as may be necessary to obtain control or management of any such entities or to be able to inspect and preserve the books and records of the Subsidiaries including, without prejudice to the generality of the foregoing, the power to appoint or remove all or any directors and other officers and agents (including legal

3

49

representatives) of any such Subsidiaries and to take all such steps as the JPLs think fit to protect the interests of the Company therein;

(k)    to ascertain and conduct investigations into the assets, liabilities and affairs of the Company and the Subsidiaries, and the JPLs shall report to the Court on any matters relevant to the winding up application not less than seven days before the hearing of that application;

(l)    to do all such things as may be necessary or expedient for the protection or preservation of the value of the Company Assets;

(m)    to take any such action as may be necessary or desirable to obtain recognition of the appointment of the JPLs in any other relevant jurisdiction and to make applications to any foreign courts for that purpose;

(n)    to determine and, if considered appropriate, pay or authorise the payment of (on behalf of the Company) any debt, liability or obligation of the Company incurred in the ordinary course; and

(o)    to do all things necessary or incidental to the foregoing functions, duties and powers.

13. The directors, officers, employees, agents, and legal representatives of the Company shall as soon as practicable deliver to the JPLs the books and records of the Company in their respective possession or control and shall provide details as to where such books and records are located and the location of any other documents belonging to the Company to the extent that they are aware of such books and records or other documents.

14. The JPLs shall have the power to examine on oath current and former directors, officers, employees, agents, and legal representatives of the Company as to the affairs, assets and records of the Company.

15. The JPLs shall be authorised to render and pay invoices out of the Company Assets for their own remuneration at the rates agreed with the Applicant and approved by the Court, together with all costs, charges and expenses of their legal practitioners, and all other agents, managers, accountants or other persons that the JPLs may employ.

16. The JPLs shall be at liberty to meet all disbursements reasonably incurred in connection with the performance of their duties and functions.

4

50

17. No disposition of the Company's property by or with the authority of the JPLs in either case in the carrying out of their duties and functions and the exercise of their powers under this Order shall be avoided.

18. No claim or other proceedings, including criminal proceedings, shall be proceeded with or commenced against the Company except with the leave of the Court and subject to such terms as the Court may impose.

19. During the period of their appointment, any act required or authorised to be done by the JPLs may be done by any one or more of the JPLs.

20. The Application for the winding up of the Company shall be heard on a date to be fixed.

21. The JPLs, the Applicant, and the Directors of the Company shall each have liberty to apply to vary or set aside this order or for further directions on no less than 48 hours written notice.

22. The Applicant's costs of and incidental to the application for provisional liquidation shall be costs in the Application.

**BY THE COURT**

Dep. **REGISTRAR**

51

EASTERN CARIBBEAN SUPREME COURT
BRITISH VIRGIN ISLANDS
IN THE HIGH COURT OF JUSTICE
COMMERCIAL DIVISION

IN THE MATTER OF SECTION 218 OF THE BVI BUSINESS COMPANIES ACT, 2004
AND IN THE MATTER OF MURASET LIMITED AND AFFINITY EQUITY
INTERNATIONAL PARTNERS LIMITED
AND IN THE MATTER OF AN APPLICATION FOR THE RESTORATION OF
DISSOLVED COMPANIES

Claim No.

SRC INTERNATIONAL (MALAYSIA) LTD
Claimant
and

REGISTRAR OF CORPORATE AFFAIRS
Defendant

---

**Order**

---



Helm House, Fish Bay,
Tortola, British Virgin Islands
1 284 541 8809
**Legal Practitioners for the Applicant**

6

52



**IN THE GRAND COURT OF THE CAYMAN ISLANDS**
**FINANCIAL SERVICES DIVISION**

**CAUSE NO: FSD 51 OF 2022 (IKJ)**

**IN THE MATTER OF THE COMPANIES ACT (2022 REVISION)**

**AND IN THE MATTER OF BRIDGE GLOBAL ABSOLUTE RETURN FUND SPC**

---

### WINDING UP ORDER

---

**UPON** the application of Brazen Sky Limited (In Liquidation) (the **Petitioner**) by its petition dated 11 March 2022 for an order that Bridge Global Absolute Return Fund SPC (the **Company**) be wound up in accordance with the provisions of the Companies Act (2022 Revision) (the **Companies Act**) and that Angela Barkhouse and George Kimberley Leck be appointed as joint official liquidators of the Company

**AND UPON READING** the First Affidavit of Helen Janes sworn on 11 March 2022 and the exhibit thereto

**AND UPON** reading the First Affidavit of Angela Barkhouse sworn on 23 February 2022 and the First Affidavit of George Kimberley Leck sworn on 23 February 2022 and the exhibits thereto

**AND UPON** hearing counsel for the Petitioner

**AND UPON** the Court being satisfied that Angela Barkhouse and George Kimberley Leck are qualified insolvency practitioners who are willing and properly able to accept appointment as joint official liquidators of the Company

**THIS ORDER** was filed by Baker and Partners (Cayman) Limited, attorneys for the Petitioner, whose address for service is 720 Buckingham Square, West Bay Road, PO Box 636, Grand Cayman KY1-1107 (Ref: RDSS.001.002).



**IT IS HEREBY ORDERED THAT:**

1.  The Company be wound up in accordance with sections 92(d) and 92(e) of the Companies Act.

2.  Angela Barkhouse and George Kimberley Leck of Quantuma (Cayman) Limited t/a Quantuma of Suite N404, Flagship Building, 142 Seafarers Way, George Town, Grand Cayman, Cayman Islands be appointed as joint official liquidators of the Company (the **JOLs**).

3.  The JOLs shall not be required to give security for their appointment.

4.  The JOLs shall have the power to act jointly and severally in their capacity as liquidators of the Company.

5.  The JOLs be authorised to take steps as necessary or desirable to take possession, custody and control of the assets, books and records of the Company and each of its segregated portfolios, including Bridge Diversified Strategies Fund A1 Segregated Portfolio, Bridge Diversified Strategies Fund A2 Segregated Portfolio, Bridge Global Resources Fund B1 Segregated Portfolio, Bridge Global Resources Fund B2 Segregated Portfolio, Bridge Emerging Ventures Fund C1 Segregated Portfolio, and Bridge Emerging Ventures Fund C2 Segregated Portfolio (together, the **Segregated Portfolios**).

6.  The Court requires any person who is or was a director, officer or professional service provider of the Company, to deliver up to the JOLs, in accordance with the directions of the JOLs, any of the Company's property which is in his custody or under his control and which he is required by law to deliver up.

7.  The JOLs be at liberty and are authorised and empowered to apply to any court, tribunal, regulatory or administrative body, wherever located, for the recognition of the winding up order and their appointment (with or without a letter of request) and for assistance in

THIS ORDER was filed by Baker and Partners (Cayman) Limited, attorneys for the Petitioner, whose address for service is 720 Buckingham Square, West Bay Road, PO Box 636, Grand Cayman KY1-1107 (Ref: RDSS.001.002).



carrying out their powers and duties, and the JOLs are authorised and empowered to appoint other professionally qualified persons including an agent or interim co-trustee in any jurisdiction outside of the Cayman Islands for the purpose of obtaining recognition of the winding up order and their appointment (with or without a letter of request) and to assist with the investigation, collection and protection of the Company's documents and assets situated in that jurisdiction, and further the JOLs are authorised and empowered to act as a representative in respect of the winding up proceedings for the purpose of having the proceedings and their appointment recognised (with or without a letter of request) in any jurisdiction outside the Cayman Islands.

8. In addition to the powers prescribed in Part II of the Third Schedule to the Companies Act which are exercisable without sanction of the Court, the JOLs shall without further sanction or intervention from this Court, exercise the powers set out in Part I of the Third Schedule to the Companies Act as follows:

   i.    To bring or defend any action or other legal proceeding in the name and on behalf of the Company and the Segregated Portfolios;

   ii.   To do any act or thing considered by them to be necessary or desirable in connection with the liquidation of the Company and Segregated Portfolios, and the winding up of its affairs in the Cayman Islands or elsewhere;

   iii.  To dispose of any property of the Company or any of the Segregated Portfolios to a person who is or was related to the Company;

   iv.   To pay any class of creditors in full;

   v.    To make any compromise or arrangement with creditors or persons claiming to be creditors or having or alleging themselves to have any claim (present or future, certain or contingent, ascertained or sounding only in damages) against the Company or for which the Company may be rendered liable.

**THIS ORDER** was filed by Baker and Partners (Cayman) Limited, attorneys for the Petitioner, whose address for service is 720 Buckingham Square, West Bay Road, PO Box 636, Grand Cayman KY1-1107 (Ref: RDSS.001.002).



    vi.    To compromise on such terms as may be agreed all debts and liabilities capable of resulting in debts, and all claims (present or future, certain or contingent, ascertained or sounding only in damages) subsisting or supposed to subsist between the Company or its Segregated Portfolios and a contributory or alleged contributory or other debtor or person apprehending liability to the Company or its Segregated Portfolios.

    vii.    To deal with all questions in any way relating to or affecting the assets or the winding up of the Company and its Segregated Portfolios, to take any security for the discharge of any such call, debt, liability or claim and to give a complete discharge in respect of it.

    viii.    To sell any of the property of the Company or the Segregated Portfolios by public auction or private contract with power to transfer the whole of it to any person or to sell the same in parcels.

    ix.    To appoint such counsel, attorneys, professional advisors whether in the Cayman Islands or elsewhere, as they may consider necessary to advise and assist them in the performance of their duties in accordance with Order 25 of the Companies Winding Up Rules (2018 Revision) (**CWR**) and for the engagement of Baker and Partners (Cayman) Limited as Cayman Islands counsel to the JOLs.

    x.    To engage staff (whether or not as employees of the Company) and/or agents whether in the Cayman Islands or elsewhere, to assist them in the performance of their functions contemplated by this Order, which they are unable to do themselves or which can be more conveniently done by an agent.

and for the avoidance of doubt the powers bestowed on the JOLs may be exercised by them within and outside the Cayman Islands.

THIS ORDER was filed by Baker and Partners (Cayman) Limited, attorneys for the Petitioner, whose address for service is 720 Buckingham Square, West Bay Road, PO Box 636, Grand Cayman KY1-1107 (Ref: RDSS.001.002).



9.   The JOLs shall have the power to take control of and, where the JOLs consider it appropriate to do so, take such steps as may be necessary to liquidate and/or wind-up any of the Company's subsidiaries (whether in the Cayman Islands or elsewhere and whether voluntarily or through court proceedings).

10.  No suit, action or other proceedings shall be proceeded with or commenced against the Company except with leave of the Court pursuant to section 97 of the Companies Act.

11.  No disposition of the Company's property or the segregated property of the Segregated Portfolios by or with the authority of the JOLs in carrying out their duties and functions and the exercise of their powers shall be voided by virtue of section 99 of the Companies Act.

12.  The JOLs' remuneration and expenses be paid out of the assets of the Company and the assets of the Segregated Portfolios in accordance with section 109 of the Companies Act, the Insolvency Practitioner's Regulations 2018 (as amended) and the CWR. To the extent that the actions of the JOLs benefits the Company and/or any or all of the Segregated Portfolios, the JOLs shall be permitted to allocate their remuneration and expenses amongst the Company and the Segregated Portfolios in a manner they consider fair and equitable.

13.  The JOLs be at liberty to meet all disbursements reasonably incurred with the performance of their duties out of the general assets of the Company and the Segregated Portfolios, as an expense of the liquidation. To the extent that the actions of the JOLs benefits the Company and/or any or all of the Segregated Portfolios, the JOLs shall be permitted to allocate their remuneration and expenses amongst the Company and the Segregated Portfolios in a manner they consider fair and equitable.

14.  The JOLs be at liberty to pay their agents, employees, attorneys, solicitors and whomever else they may employ or instruct, remuneration and costs, and for the avoidance of doubt, all such payments shall be made as and when they fall due out of the assets of the

**THIS ORDER** was filed by Baker and Partners (Cayman) Limited, attorneys for the Petitioner, whose address for service is 720 Buckingham Square, West Bay Road, PO Box 636, Grand Cayman KY1-1107 (Ref: RDSS.001.002).

59

Company and its Segregated Portfolios as expenses of the winding up. To the extent that the actions of the JOLs benefits the Company and/or any or all of the Segregated Portfolios, the JOLs shall be permitted to allocate their remuneration and expenses amongst the Company and the Segregated Portfolios in a manner they consider fair and equitable.

15.   The JOLs shall have liberty to apply generally.

16.   The Petitioner's costs of and incidental to the Petition be paid from the assets of the Company and the Segregated Portfolios as an expense of the liquidation.

**DATED** the      5th   day of    May  2022
**FILED** the       5th   day of    May  2022

_____

**THE HON. JUSTICE IAN KAWALEY**
**JUDGE OF THE GRAND COURT**

THIS ORDER was filed by Baker and Partners (Cayman) Limited, attorneys for the Petitioner, whose address for service is 720 Buckingham Square, West Bay Road, PO Box 636, Grand Cayman KY1-1107 (Ref: RDSS.001.002).