**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**
www.flsb.uscourts.gov

| | |
|---|---|
| In re: | |
| Brazen Sky Limited | Chapter 15 |
| Debtor in a Foreign Proceeding. | Case No.: |
| In re: | |
| Aabar Investments PJS Limited | Chapter 15 |
| Debtor in a Foreign Proceeding. | Case No.: |
| In re: | |
| Tanore Finance Corporation | Chapter 15 |
| Debtor in a Foreign Proceeding. | Case No.: |
| In re: | |
| Blackstone Asia Real Estate Partners Limited | Chapter 15 |
| Debtor in a Foreign Proceeding. | Case No.: |
| In re: | |
| Vasco Investment Services SA | Chapter 15 |
| Debtor in a Foreign Proceeding. | Case No.: |
| In re: | |
| Selune Limited | Chapter 15 |
| Debtor in a Foreign Proceeding. | Case No.: |

1

In re:

Pacific Rim Global Growth Limited                    Chapter 15

    Debtor in a Foreign Proceeding.              Case No.:
_____/

In re:

Affinity Equity International Partners Limited       Chapter 15

    Debtor in a Foreign Proceeding.              Case No.:
_____/

In re:

Bridge Global Absolute Return Fund SPC               Chapter 15

    Debtor in a Foreign Proceeding.              Case No.:
_____/

### DECLARATION OF ADAM CRANE IN SUPPORT OF CHAPTER 15 PETITION FOR RECOGNITION OF A FOREIGN PROCEEDING

I, ADAM DOUGLAS CRANE hereby declare under penalty of perjury under the laws of the United States as follows:

### BACKGROUND

1.    I am an attorney-at-law duly admitted to practice in the Cayman Islands. I am a partner in the law firm of Baker and Partners (Cayman) Limited ("Baker & Partners"). I act as Cayman Islands counsel to Angela Barkhouse and George Kimberley Leck, the joint liquidators (the "JLs" or "Foreign Representatives") of Bridge Global Absolute Return Fund SPC ("Bridge Global Fund") and on behalf of and for the account of its segregated portfolios (each a "Segregated Portfolio" and collectively, the "Segregated Portfolios") as follows

    (a) Bridge Diversified Strategies Fund A1 Segregated Portfolio;
    (b) Bridge Diversified Strategies Fund A2 Segregated Portfolio;
    (c) Bridge Global Resources Fund B1 Segregated Portfolio;
    (d) Bridge Global Resources Fund B2 Segregated Portfolio;

(e) Bridge Emerging Ventures Fund C1 Segregated Portfolio; and

(f) Bridge Emerging Ventures Fund C2 Segregated Portfolio.

2. I am over the age of 18 and I am duly authorized to make this declaration acting in my capacity as Cayman Islands counsel. Where the matters stated in this declaration are statements of fact that are within my personal knowledge, they are true. Where the matters stated in this declaration are statements of fact that are not within my personal knowledge, they are derived from documents and/or information obtained through the joint liquidators' investigations and are true to the best of my knowledge, information, and belief. If called upon, I could testify as to all matters set forth in this declaration.

3. I am licensed to practice law in the Cayman Island. I was awarded a Bachelor of Laws ("LL.B.") from the Schulich School of Law, Dalhousie University, Halifax, Nova Scotia, Canada, which was later replaced with a Juris Doctor ("JD"). I regularly advise clients on the laws of the Cayman Islands. My practice in the Cayman Islands primarily focuses on insolvency, corporate recovery, corporate fraud, and commercial litigation, which includes acting for companies and other parties seeking Chapter 15 recognition in the United States. I have advised companies, insolvency practitioners and creditors in respect of insolvency proceedings.

## STATEMENTS ON CAYMAN ISLANDS LAW

### Cayman Islands Legal System

4. The Cayman Islands is a British Overseas Territory and a distinct legal jurisdiction. The courts of the Cayman Islands administer justice in accordance with: (a) local statutes, (b) subordinate legislation, (c) statutes passed by the parliament of the United Kingdom that have been expressly extended to apply to the Cayman Islands, (d) orders of Her Majesty's Privy Council applicable in the Cayman Islands, and (e) principles of common law.

5. The Grand Court is the Court of first instance for insolvency matters, with appeals lying to the Cayman Islands Court of Appeal ("Court of Appeal"). The final appellate court for the Cayman Islands is the Judicial Committee of the Privy Council ("Privy Council") in England.

6. The Cayman Islands legal system is a common law system based on the doctrine of judicial precedent. In the absence of any specific Cayman Islands binding authority, the Cayman Islands courts will look to and apply decisions of the English courts which are highly persuasive but not binding. The Cayman Islands courts may also consider decisions of courts in other Commonwealth jurisdictions which are persuasive but not binding.

## Liquidation of Cayman Islands Companies

7. The substantive laws of the Cayman Islands relating to the winding up of companies incorporated in the Cayman Islands is generally contained in Part V of the Companies Act (as revised) (the "Companies Act"). Part V of the Companies Act is supplemented by detailed rules governing the practice and procedure for insolvencies of companies that are set out in the Companies Winding Up Rules, 2018 (as revised), the Insolvency Practitioners' Regulations 2018 (as revised), Foreign Bankruptcy Proceedings (International Co-operation) Rules, 2018, and the Grand Court Rules 1995 (as revised), together with a substantial body of local case law. The provisions of Part V of the Companies Act apply to companies formed and registered under the Companies Act, including companies that are formed as segregated portfolio companies.

8. Segregated portfolio companies are generally governed by Part XIV of the Companies Act. Pursuant to Part XIV, a segregated portfolio company is a single legal entity and any segregated portfolio of or within a segregated portfolio company shall not constitute a legal entity separate from the segregated portfolio company. Therefore, liquidation is only available with respect to the segregated portfolio company as a whole.

9. The Companies Act provides for three different modes of winding up: (1) compulsory winding up by order of the Grand Court, (2) voluntary winding up initiated by a resolution of the shareholders, and (3) voluntary winding up initiative by a resolution of the shareholders, but subsequently brought under the supervision of the Grand Court.

10. Pursuant to section 94 of the Companies Act, a creditor (including any contingent or prospective creditor), contributory (i.e., a shareholder), or the company itself (where the directors have obtained shareholder authorization or where there is prior authorization to do so in its Articles of Association) can petition for the compulsory winding up of a company on the grounds set out in section 92. The Cayman Islands Monetary Authority may also petition to wind up a company if the company is carrying on regulated business.

11. Pursuant to section 92 of the Companies Act, a company may be compulsorily wound up by the Grand Court if (i) the company has passed a special resolution requiring the company to be wound up by the court, (ii) the company does not commence business within a year from its incorporation, or suspends its business for a year, (iii) the period, if any, fixed for the duration of the company by the articles of association expires, or whenever the event, if any, occurs, upon the occurrence of which it is provided by the articles of association that the company is to be wound up, (iv) the company is unable to pay its debts, or (v) the court decides that it is "just and equitable" that the company should be wound up.

12. In this case, the winding up of Bridge Global Fund was initiated by a winding up petition presented by Brazen Sky Limited (in liquidation) ("Brazen Sky"), a company incorporated in the British Virgin Islands, on the grounds that it was just and equitable to wind up Bridge Global Fund, and alternatively, the Bridge Global Fund was unable to pay its debt as they fall due and should be wound up. The Bridge Global Fund is implicated in the fraud against 1Malaysia Development Berhad ("1MDB"). Section 97(1) of the Companies Act provides for a broad stay of actions against the company upon the entry of a winding up order

or the appointment of a provisional liquidator. In particular, "*no suit, action or other proceedings, including criminal proceedings, shall be proceeded with or commenced against the company except with the leave of the Court and subject to such terms as the Court may impose*".

13. Under the Companies Act, the Grand Court may (i) consider the creditor's interests for all matters related to the winding up of an insolvent company, (ii) make debts payable on a contingency basis and admit claims, whether present or future, or fixed or contingent, against the company, (iii) appoint a liquidator who is required to convene a meeting of creditors to ascertain their wishes, and (iv) apply the property of the debtor in satisfaction of its liabilities and distribute such property to creditors in accordance with their rights and interests.

14. When a winding up order is made in respect of a Cayman Islands company, certain antecedent transactions may be liable to be set aside and certain claims pursued by the liquidators. These include but are not limited to:

   a. Claims under section 145 of the Companies Act to set aside, on the application of a liquidator, transactions or arrangements (specifically including transfers of property) which were undertaken within the six months preceding the date of filing the winding up petition at a time when the company was insolvent, and with a view to preferring a creditor or creditors ahead of other creditors. If the transaction is conducted with a related party, then it is presumed that the transaction was undertaken with a view to preferring that creditor. Related parties are defined under section 145(2) of the Companies Act as persons or entities having the ability "*to control or exercise significant influence over the company in making financial and operating decisions*". Directors are related

parties for the purpose of the Companies Act. If section 145 is satisfied, then the disposition is treated as being void.

b. Claims by liquidators under section 146 of the Companies Act challenging undervalue transactions. "Undervalue" means "*the provision of no consideration for the disposition, or a consideration for the disposition the value of which in money or money's worth is significantly less than the value of the property which is the subject of the disposition*". The burden of proof is on the liquidator to establish intent to defraud, which is defined as meaning "*an intention of a transferor willfully to defeat an obligation owed to a creditor*". "Obligation" is defined as meaning "*an obligation or liability (including a contingent liability) which existed on or before the date of the disposition and of which the transferor had notice*". The question of whether actual notice is necessary has not yet been determined but it seems likely that constructive notice would be sufficient. It is unlikely that the Grand Court would assist a transferor to defeat his or her creditors where he knew or ought to have known of their existence. "Creditor" is simply defined as being a person to whom an obligation is owed. There is a limitation period of six years form the date of filing the winding up petition for commencement of proceedings. If the conditions are met then the Grand Court's order may provide for the legal costs of a transferee who has acted in good faith in defending the action and take account of his pre-existing rights and interests of the transferee. The Grand Court is able to make such order as it thinks fit for restoring the position to what it would have been if the company had not entered into the transaction.

c. Claims by liquidators under section 147 of the Companies Act where any business of the company has been carried on with intent to defraud creditors of

       the company or creditors of any other persons, or for any fraudulent purpose. On the liquidator's application, the Grand Court can declare any persons who were knowingly parties to the carrying on of the business in that manner to be liable to make such contributions to the company's assets as the Grand Court thinks proper. Usually, each director will "knowingly" be a party to the ways in which the business of the company is carried on and therefore potentially liable if that business is carried on fraudulently. There is no applicable limitation period for this offence.

   d.   Claims that may be brought by a liquidator on behalf of the company to which they are appointed: for example, deceit, fraudulent misrepresentation, dishonest assistance, knowing receipt, unlawful means conspiracy or, in respect of the directors of the company, for the breach of fiduciary duties.

     15.    In my experience, Cayman Islands liquidation proceedings are fair and equitable. In a liquidation, according to section 140 of the Companies Act, the claims of creditors and investors within the same class are treated on a *pari passu* basis. The Companies Act provides that section 140 shall be modified so that it shall apply in relation to protected segregated portfolio companies in accordance with Part XIV of the Companies Act governing segregated portfolio companies, and in the event of any conflict between Part XIV and section 140, Part XIV shall prevail. Section 223 of the Companies Act provides that in the winding-up of a segregated portfolio company, the liquidator shall deal with the company's assets only in accordance with the procedures set out in section 219(6), and in discharge of the claims of creditors of the segregated portfolio company and holders of segregated portfolio shares, shall apply the segregated portfolio company's assets to those entitled to have recourse thereto under Part XIV of the Companies Act.

16. Section 219(6) of the Companies Act places a duty on the directors of a segregated portfolio company to establish and maintain (or cause to be established and maintained) procedures —

   a. to segregate and keep segregated, portfolio assets separate and separately identifiable from general assets;

   b. segregate, and keep segregated, portfolio assets of each segregated portfolio separate and separately identifiable from segregated portfolio assets of any other segregated portfolio; and

   c. ensure that assets and liabilities are not transferred between segregated portfolios or between a segregated portfolio and the general assets otherwise than at full value.

17. Moreover, all creditors and interest holders have an opportunity to be heard by the Grand Court and no creditor will be prejudiced because it is domiciled or otherwise located outside of the Cayman Islands. There is substantial judicial oversight in a liquidation which can be invoked by interested persons, including a creditor.

### The Liquidators

18. The Joint Official Liquidators are fiduciaries and officers of the Grand Court. Pursuant to section 110 of the Companies Act, the duties of the Joint Official Liquidators are (a) to collect, realize and distribute the assets of the company to its creditor and, if there is a surplus, to equity holders and (b) to report to the company's creditors and contributories (i.e., shareholders) upon the affairs of the company and the manner in which it is being wound up. In addition, under section 102 of the Companies Act, the Joint Official Liquidators are empowered to investigate (i) the causes for the failure of the company, and (ii) generally, the promotion, business, dealings and affairs of the company. The Joint Official Liquidators are

subject to the supervision and oversight of the Grand Court with respect to the performance of their duties.

19. Schedule 3, Part II of the Companies Act provides that an official liquidator is permitted to exercise the following powers without sanction from the Grand Court:

   a. The power to take possession of, collect and get in the property of the company and for that purpose to take all such proceedings as he or she considers necessary.

   b. The power to do all acts and execute, in the name and on behalf of the company, all deeds, receipts and other documents and for that purpose to use, when necessary, the company seal.

   c. The power to prove, rank and claim in the bankruptcy, insolvency or sequestration of any contributory for any balance against his or her estate, and to receive dividends in the bankruptcy, insolvency or sequestration in respect of that balance, as a separate debt due from the bankrupt or insolvent and rateably with the other separate creditors.

   d. The power to draw, accept, and make and indorse any bill of exchange or promissory note in the name and on behalf of the company, with the same effect with the respect of the company's liability as if the bill or note had been drawn, accepted, made or indorsed by or on behalf of the company in the course of its business.

   e. The power to promote a scheme of arrangement pursuant to section 86.

   f. The power to convene meetings of creditors and contributories (i.e. shareholders).

   g. The power to do all other things incidental to the exercise of his or her powers.

20. There is currently only one known creditor of the Bridge Global Fund being Brazen Sky. The previous registered office of Bridge Global Fund, Campbells Corporate Services Limited, advised the Joint Official Liquidators that it resigned from its position as registered office due to non-payment of fees however it has not subsequently quantified or substantiated its claim. During a meeting of creditors convened for 27 May 2022, no creditors were in attendance and accordingly a liquidation committee was not elected. The Joint Official Liquidators consult with the board of 1MDBon various matters related to Bridge Global, including the Joint Official Liquidators' efforts to identify and recover the assets of the Bridge Global Fund for the benefit of creditors.

21. Unless otherwise ordered by the Grand Court, Schedule 3, Part I to the Companies Act sets out the powers that an official liquidator may exercise with the sanction of the Grand Court. These include the following:

   a. Power to bring or defend any action or other legal proceeding in the name and on behalf of the company.

   b. Power to carry on the business of the company so far as may be necessary for its beneficial winding up.

   c. Power to dispose of any property of the company to a person who is or was related to the company.

   d. Power to pay any class of creditors in full.

   e. Power to make any compromise or arrangement with creditors or persons claiming to be creditors or having or alleging themselves to have any claim (present or future, certain or contingent, ascertained or sounding only in damages) against the company or for which the company may be rendered liable.

11

  f. Power to compromise on such terms as may be agreed all debts and liabilities capable of resulting in debts, and all claims (present or future, certain or contingent, ascertained or sounding only in damages) subsisting, or supposed to subsist between the company and a contributory or alleged contributory or other debtor or person apprehending liability to the company.

  g. Power to deal with all questions in any way relating to or affecting the assets or the winding up of the company, to take any security for the discharge of any such call, debt, liability or claim and to give a complete discharge in respect of it.

  h. The power to sell any of the company's property by public auction or private contract with power to transfer the whole of it to any person or to sell the same in parcels.

  i. The power to raise or borrow money and grant securities therefore over the property of the company.

  j. The power to engage staff (whether or not as employees of the company) to assist him or her in the performance of his or her functions.

  k. The power to engage attorneys and other professionally qualified persons to assist him or her in the performance of his or her functions.

22. A liquidation can be terminated when the liquidator(s), after completing their duties to wind up the affairs of the company, prepares a final report together with a statement of realizations and distributions for the creditors and members. A liquidation can also be terminated by the court, on an application by the liquidator, a creditor, director or member, if the court considers it is just and equitable to do so. Once the court is satisfied that the affairs of the company have been completely wound up, the court shall make an order that the

company be dissolved from the date of that order or such other date as the court thinks fit, and the company shall be dissolved accordingly.

23. The effect of an order for dissolution in respect of a segregated portfolio is that its creditors' claims against the company shall be extinguished, notwithstanding that the company has not been liquidated and dissolved.

24. Importantly, the restriction on the carrying on of an exempted company's business inside the Cayman Islands no longer applies after a company commences liquidation in the Cayman Islands. Under the Winding Up Order, the Joint Official Liquidators were granted various powers to enable them to effectively carryout their duties, but it remains the case that if they are contemplating actions that are not of automatic statutory application or as otherwise expressly provided in the Winding Up Order, they are required to seek the Grand Court's approval.

25. In practice, this means that the management of the Bridge Global Fund is being conducted by the Petitioners largely from within the Cayman Islands, and the management of the Bridge Global Fund's liquidation process remains wholly subject to the supervision of the Grand Court. Accordingly, I believe that the center of main interests for the Bridge Global Fund is in the Cayman Islands, given the substantial nexus between them.

[Verification on next page]

## 28 U.S.C. § 1746 VERIFICATION

I, Adam Douglas Crane, declare under penalty of perjury under the laws of the United States of America, 28 U.S.C. §1746, that I have the authority to make this Declaration; that I have read the foregoing Declaration; and that the facts and matters alleged and contained herein are true and correct to the best of my knowledge and belief, based upon my own personal knowledge of the facts involved and upon my review of the available documents pertaining to the Bridge Global Fund.

Executed in Grand Cayman, Cayman Islands on August 31, 2022

By: _____
Adam Crane